**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOSHUA BARNES                                    CIVIL ACTION
    **Plaintiff**

**VERSUS**                                         NO.  14-2636

KEITH MCQUEEN, et al.                          SECTION: "E" (3)
    **Defendants**

<u>**ORDER AND REASONS**</u>

Before the Court are two motions to dismiss filed by Defendants Nicholas Knight, Rockwell McClellan, Keith Bowman, and the City of Slidell.[1] For the reasons stated herein, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

Plaintiff Joshua Barnes ("Barnes") filed this action under 42 U.S.C. § 1983 on November 19, 2014, against Defendants Keith McQueen ("McQueen"), Nicholas Knight ("Knight"), Rockwell McClellan ("McClellan"), Keith Bowman ("Bowman"), and the City of Slidell ("City").[2]

Barnes avers that on November 27, 2013, he went to his ex-wife's residence to pick up his children.[3] At all relevant times, Barnes' ex-wife was married to and lived with McQueen, a police officer with the Slidell Police Department.[4] Barnes alleges that when he was waiting for one of his children, McQueen "ran at [Barnes] knocking him to the ground" and "struck [Barnes] and repeatedly hit him with his knees all over his body."[5] Barnes' 13-year-old son called 9-1-1.[6] McQueen's neighbor came out, and McQueen

---

[1] R. Docs. 55, 99.
[2] R. Doc. 1. The Slidell Police Department was dismissed as a party on November 6, 2015. *See* R. Doc. 77.
[3] R. Doc. 90 at ¶ 1.
[4] *Id.*
[5] *Id.* at ¶ 2.
[6] *Id.* at ¶ 3.

1

allegedly told the neighbor that Barnes was violating a protective order and instructed the neighbor to help arrest Barnes.[7] McQueen and his neighbor handcuffed Barnes.[8]

McQueen then called the Slidell Police Department on a non-emergency line and requested assistance, according to the second amended complaint.[9] Slidell Police Officer Knight, Sergeant Bowman, and Lieutenant McClellan arrived, took Barnes into their custody, and transported him to the Slidell lock-up, where he was charged with violating a protective order and simple assault.[10] The complaint alleges that the officers failed to verify that a protective order was in place, as there was none.[11] The complaint states, however, that a permanent injunction was in place.[12] The complaint also alleges that "[a]t no time did Mr. Barnes strike, attempt to strike, or intend to strike anyone involved in the attack against him."[13]

Barnes brings claims against McQueen in his individual capacity because, Barnes alleges, McQueen "acted out of malice when he attacked Mr. Barnes and publicly berated him over child support payments in front of Mr. Barnes children."[14] Barnes also brings claims against McQueen in his official capacity pursuant to 42 U.S.C. § 1983, arguing McQueen violated his rights "by beating him and falsely arresting him in front of [Barnes'] children."[15] Barnes also brings § 1983 claims for false arrest and excessive force,[16] and

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 5.
[10] *Id.* at ¶ 9; R. Doc. 97-3.
[11] R. Doc. 90 at ¶ 9.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶¶ 14–18.
[16] *Id.* at ¶¶ 19–20. The constitutional torts underlying Barnes' § 1983 claims are false arrest and excessive force. *See id.* In McQueen's motion to dismiss, McQueen states, "Although Plaintiff's claim is vague, it appears that he is alleging two constitutional tort claims, (1) false arrest or imprisonment; and (2) excessive use of force." R. Doc. 97-1 at 8. McQueen argues he is entitled to qualified immunity on those § 1983 claims. *Id.* at 8–12.

Barnes asserts state-law claims against McQueen for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[17]

Barnes alleges that Knight, McClellan, and Bowman conspired with McQueen to deprive Barnes of his rights under color of law.[18] Barnes also brings § 1983 claims for false arrest and excessive force[19] against Knight, McClellan, and Bowman for their individual actions.[20] Barnes asserts state-law claims against the officers for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[21]

Barnes asserts vicarious liability claims against the City under § 1983 and under state law and alleges the City is liable under § 1983 for the negligent hiring and retention of employees, the negligent training and supervision of its employees, and the failure to adopt sufficient policies to deter or prevent the violation of Barnes' civil rights, and for allowing the conspiracy and cover-up of the unlawful arrest and prosecution of Barnes.[22]

On January 9, 2015, Defendants Knight, McClellan, and Bowman filed a motion to dismiss for insufficient process, insufficient service of process, and failure to state a claim.[23] The City filed a motion to dismiss for failure to state a claim on March 16, 2015.[24] On May 21, 2015, the Court denied these motions without prejudice, ordering Barnes to

---

[17] R. Doc. 90 at ¶¶ 19–22, 35.
[18] *Id.* at ¶ 24.
[19] *Id.* at ¶¶ 24–26, 36. The constitutional torts underlying Barnes' § 1983 claims are false arrest and excessive force. *See id.* The motion to dismiss filed by Knight, McClellan, Bowman, and the City states, "[I]t is assumed that the plaintiff is only bringing claims against defendants Knight, McClellan and Bowman under § 1983 for excessive force and false arrest . . . ." R. Doc. 55-1 at 6–12. The officers argue they are entitled to qualified immunity on those § 1983 claims. *Id.* at 6–12.
[20] R. Doc. 90 at ¶¶ 24–26, 36.
[21] *Id.* at ¶¶ 19–22, 35.
[22] *Id.* at ¶¶ 32–34, 40–41.
[23] R. Doc. 10.
[24] R. Doc. 29.

file an amended complaint by June 19, 2015.[25] Barnes filed his amended complaint on June 16, 2015.[26]

On June 24, 2015, Defendants Knight, McClellan, Bowman, and the City filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.[27] The motion asserts that Knight, McClellan, and Bowman are entitled to qualified immunity and that Barnes fails to state a claim against Knight, McClellan, Bowman, and the City.[28] Barnes filed a response in opposition on July 7, 2015.[29] Defendants filed a reply on July 22, 2015.[30]

On January 25, 2016, Barnes filed a Second Supplemental and Amended Complaint naming Southern Fidelity Insurance Company, McQueen's homeowner's insurer.[31] Knight, McClellan, Bowman, and the City filed a motion to dismiss the second amended complaint on February 8, 2016, adopting the memorandum of support in their June 24, 2015, motion to dismiss.[32] Barnes filed a response in opposition on March 1, 2016, adopting his July 7, 2015, opposition and reiterating various allegations from his complaint.[33]

---

[25] R. Doc. 42. Barnes argues in his opposition that the Defendants are barred from filing "further pre-answer motions under Rule 12" because their initial 12(b) motions "have been correctly denied by this Honorable Court." R. Doc. 61 at 5–6. The Court denied those motions without prejudice, however, allowing Defendants to refile Rule 12(b) motions should grounds arise. Therefore, Barnes' argument that Defendants are precluded from filing the Rule 12 motion currently before the Court is without merit.
[26] R. Doc. 53.
[27] R. Doc. 55.
[28] R. Doc. 55-1 at 6–15.
[29] R. Doc. 61.
[30] R. Doc. 68.
[31] R. Doc. 90 at 3.
[32] R. Doc. 99.
[33] R. Doc. 106.

## STANDARD OF LAW

When deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[34] The Court may consider only the pleadings, the documents attached to or incorporated by reference in the plaintiff's complaint, the facts of which judicial notice may be taken, matters of public record,[35] and documents attached to a motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[36] If the Court accepts materials outside of the pleadings that do not fit within these parameters, the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56.[37]

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face.[38] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[40] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action."[41] The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."[42]

---

[34] *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935, 188 (2014).

[35] *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[36] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[37] FED. R. CIV. P. 12(d).

[38] *Brand*, 748 F.3d at 637–38.

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[40] *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).

[41] *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).

[42] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

## DISCUSSION

I.    QUALIFIED IMMUNITY—INDIVIDUAL CAPACITIES

Barnes asserts § 1983 claims of excessive force and false arrest against Knight, McClellan, and Bowman.[43] Defendants argue they are entitled to qualified immunity with respect to these claims.[44]

To state a claim under 42 U.S.C. § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[45] The qualified immunity defense serves to shield government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[46] When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[47] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[48]

When evaluating a claim of qualified immunity, the Court must determine whether the facts alleged show the officer's conduct violated a constitutional right and whether the

---

[43] R. Doc. 90 at ¶¶ 26–28.

[44] R. Doc. 55-1 at 6–12.

[45] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

[46] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).

[47] Backe *v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Jordan v. City of New Orleans*, No. 15-1922, 2016 WL 633666, at *2 (E.D. La. Feb. 17, 2016).

[48] *Backe*, 691 F.3d at 648. *See also Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994) ("To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense."); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).

officer was acting under color of state law at the time of the alleged incident.[49] If there is a constitutional violation and state action, the Court must then determine whether the right was clearly established in light of the specific context of the case.[50] For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[51] Whether the right was clearly established at the time the defendant acted "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident."[52]

A.  "Under Color of State Law"

To state a claim under 42 U.S.C. § 1983, the plaintiff must show the alleged violation of the Constitution or of federal law was committed by someone acting under color of state law.[53] As a threshold matter, the Court addresses whether Knight, McClellan, and Bowman were acting under color of state law during the incident.[54]

Whether an officer acted under color of state law depends on (1) whether the officer misused or abused his official power, and (2) whether there is a nexus between the victim, the improper conduct, and the officer's performance of official duties.[55] "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law."[56] However, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state

---

[49] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).
[50] *Id.*
[51] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).
[52] *Kinney*, 367 F.3d at 350 (quoting *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001)).
[53] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).
[54] McQueen does not dispute that he was acting under color of state law at the time of the incident. *See* R. Doc. 97.
[55] *Id.* at 464–65; *Townsend v. Moya*, 291 F.3d 859, 865 (5th Cir. 2002).
[56] *Bustos*, 599 F.3d at 465.

7

action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity."[57]

Barnes alleges the officers were dispatched to McQueen's home after McQueen called the Slidell Police Department requesting assistance, the officers took Barnes into their custody, and the officers transported him to the Slidell lock-up, where Barnes was charged with violating a protective order.[58] The officers were clearly acting under color of state law.

### B.  Violations of Constitutional or Federal Law

#### 1.  *False Arrest*

##### a.  Violation of a Constitutional Right

A false arrest is a violation of the arrestee's Fourth and Fourteenth Amendment rights unless the arresting officer has probable cause for the arrest.[59] To survive a motion to dismiss a false arrest claim, a plaintiff "must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests."[60] "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[61] The facts must

---

[57] *United States v. Causey*, 185 F.3d 407, 414 (5th Cir. 1999) (quoting *Griffin v. Maryland*, 378 U.S. 130, (1964)).

[58] R. Doc. 90 at ¶¶ 5, 9.

[59] *Thomas v. Kipperman*, 846 F.2d 1009, 1011 (5th Cir. 1988) (per curiam); *Pienda v. City of Houston*, 124 F. Supp. 2d 1037, 1044 (S.D. Tex. 1999) (citing *Beck v. State of Ohio*, 379 U.S. 89 (1964); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)). *See also Perkins v. State of Miss.*, 455 F.2d 7, 39 n.70 (5th Cir. 1972) ("Beyond any doubt State police officers who deprive citizens of Federally protected rights by means of false arrest, imprisonment and prosecution are acting 'under color of law.'"); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (referring to false arrest as a "constitutional claim").

[60] *Club Retro*, 568 F.3d at 207.

[61] *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

be particularized to the arrestee. They must also be "known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest."[62] The arresting officer himself, however, need not have personal knowledge of all the facts constituting probable cause for an arrest.[63] To survive a motion to dismiss on a claim of false arrest, it is sufficient for the plaintiff to allege that the information that formed the basis for his arrest was supplied by an officer who knew or should have known the information was false.[64] Evidence that the arrestee was innocent of the crime, however, "is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"[65]

The Court must examine the allegations of the second amended complaint to determine whether the pleadings assert facts that, if true, would overcome the defense of qualified immunity. According to the complaint, McQueen requested assistance from the Slidell Police Department on a non-emergency line and told the dispatcher, "[M]y wife's ex-husband, he has a restraining order, I have a copy of the restraining order, he needs to go to jail for that."[66] Barnes also alleges that Knight, Bowman, and McClellan, "without so much as a pre cursory [sic] investigation, [] took Mr. Barnes into their custody and transported him to the Slidell lock up where he was charged with violating a protective

---

[62] *Club Retro*, 568 F.3d at 204.

[63] *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984).

[64] *See Thomas*, 846 F.2d at 1011 ("Thomas asserts that the information which formed the basis for his arrest, detention, and prosecution was maliciously supplied by Norman with the knowledge that it was false. Therefore, he asserts that his arrest . . . [was] without probable cause. This Court has specifically held that such allegations state a claim of false arrest . . . under § 1983."); *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254, 261 (5th Cir. 1984) ("[A] defendant may challenge a Fourth Amendment probable cause determination on the ground that it was based on information which the state knew or should have known to be false and that such information was necessary to the finding of probable cause.").

[65] *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

[66] R. Doc. 90 at ¶ 5.

order" but failed to verify whether there was indeed a restraining order against Barnes.[67] The complaint alleges that Knight, Bowman, and McClellan "based their decision to arrest and charge Mr. Barnes on the word of their co-worker, McQueen."[68] Barnes avers there was no protective order against him and that McQueen knew there was no such protective order.[69]

In addition to the amended complaint, the Court may consider matters of public record[70] and documents attached to the motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[71] Attached to Defendants' motion to dismiss is the consent judgment issued by the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, on July 21, 2011.[72] The consent judgment may be considered by the Court both as a matter of public record[73] and as a document that is attached to the motion to dismiss, referred to in the pleadings, and central to Barnes' claims.[74] Under these circumstances, the Court's consideration of the

---

[67] *Id.* at ¶ 9.

[68] *Id.*

[69] *Id.* at ¶¶ 10, 15.

[70] *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment." (internal citations omitted)); *Johnson v. Wells Fargo Bank, N.A.*, No. 13-1793, 2014 WL 2593616, at *3 (N.D. Tex. June 9, 2014) ("The Consent Judgment is also a matter of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.").

[71] *Brand*, 748 F.3d at 635.

[72] R. Doc. 55-2.

[73] *See Cinel*, 15 F.3d at 1343 n.6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment." (internal citations omitted)); *Johnson*, 2014 WL 2593616, at *3 ("The Consent Judgment is also a matter of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.").

[74] *See* R. Doc. 90 at ¶ 10, in which Barnes quotes the consent judgment. Barnes claims he was falsely arrested for violating a protective order or permanent injunction in violation of La. R.S. 14:79. Barnes alleges in the complaint that there was a permanent injunction that prohibited him from being on his ex-wife's property but that nevertheless he was not violating La. R.S. 14:79 by virtue of his being on his ex-wife's property. Therefore, the consent judgment is central to his claims.

consent judgment does not convert the motion to dismiss into a motion for summary judgment.[75]

In the consent judgment, the 22nd Judicial District Court did issue a permanent injunction prohibiting Barnes from going within 100 feet of his ex-wife, Mandy Barnes, or her home,[76] but to be a violation of La. R.S. 14:79, the injunction must be issued pursuant to one of the statutes or code articles listed therein.[77] This consent judgment was not.[78]

Based on review of the well-pleaded allegations in the second amended complaint and the consent judgment, the Court finds no probable cause for Barnes' arrest based on a violation of La. R.S. 14:79.[79] Violation of an injunction that was not issued pursuant to one of the statutes or code articles listed in La. R.S. 14:79 does not provide a basis for arrest under the statute. The consent judgment specifically states that the permanent injunction "shall not constitute a Louisiana Protective Order and shall not be forwarded to the Louisiana Protective Order Registry, pursuant to [La. R.S. 46:2136, *et seq.*]."[80] As a result, Barnes was not in violation of La. R.S. 14:79 when he was present on his ex-wife's property, and there was no probable cause for arrest on this basis.

Accordingly, considering the well-pleaded allegations of the complaint and the consent judgment, the Court finds Knight, McClellan, and Bowman did not have probable cause to arrest Barnes for violation of La. R.S. 14:79, and thus Barnes has sufficiently pleaded a cause of action for false arrest, a constitutional violation.

---

[75] Barnes filed a motion to strike the consent judgment and the police report from the motion to dismiss. R. Doc. 103. For the reasons stated herein, the motion to strike is **DENIED**.
[76] R. Doc. 56-3; R. Doc. 97-2.
[77] *See* LA. REV. STAT. § 14:79A(1)(a). *See also* LA. REV. STAT. §§ 9:361 et seq., 9:372, 46:2131 et seq., 46:2151, 46:2171 et seq., 46:2181 et seq.; LA. CHILD. CODE art. 1564 et seq.; LA. CODE CIV. PROC. arts. 3604, 3607.1; LA. CODE CRIM. PROC. arts. 327.1, 335.1, 335.2, 871.1.
[78] *See* R. Doc. 97-2; LA. REV. STAT. § 14:79A(1)(a).
[79] Barnes was charged with violating La. R.S. 14:79. R. Doc. 97-3 at 6; R. Doc. 90 at ¶ 9.
[80] R. Doc. 55-2 at 2.

b.  Clearly Established

The Fourth Amendment right to be free from false arrest was clearly established at the time of the incident.[81] But "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."[82] The inquiry is whether a reasonable officer could have believed the arrest at issue was lawful in light of clearly established law and the information the arresting officers possessed.[83]

Barnes alleges there was no protective order in place.[84] He also alleges that Knight, McClellan, and Bowman arrested Barnes for violating a protective order without seeing a protective order or "verifying that one existed through the Louisiana Protective Order Registry."[85] The second amended complaint further states that the officers arrested Barnes "without so much as a pre cursory [sic] investigation . . . [based] on the word of their co-worker, McQueen."[86] Taking the well-pleaded allegations of the complaint as true, the Court finds that an objectively reasonable officer would have realized that an arrest under La. R.S. 14:79 for the violation of a protective order or injunction without first seeing a copy of the protective order or injunction and without checking with the Louisiana Protective Order Registry, when there was no protective order as defined by the statute in place, was a violation of Barnes' right to be free from false arrest. Thus, a reasonable officer in the officers' circumstances would "understand that what he [was] doing violate[d]" Barnes' constitutional right to be free from false arrest.[87]

---

[81] *See Club Retro*, 568 F.3d at 206.
[82] *Id.* (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)) (internal quotation marks omitted).
[83] *Mendenhall*, 213 F.3d at 230.
[84] R. Doc. 90 at ¶¶ 10, 15.
[85] R. Doc. 90 at ¶ 9.
[86] *Id.*
[87] *See Anderson*, 483 U.S. at 640.

Accordingly, taking the well-pleaded allegations of the complaint as true and considering the consent judgment, the Court finds Knight, McClellan, and Bowman are not entitled to qualified immunity on Barnes' false arrest claim under § 1983.

### 2. Excessive Force

Barnes alleges that Knight, McClellan, and Bowman used excessive force to effect his arrest.[88] To bring a § 1983 claim for excessive force, a plaintiff must first show he was seized.[89] A seizure occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."[90] The complaint alleges Knight, McClellan, and Bowman arrested Barnes and "took Mr. Barnes into their custody and transported him to the Slidell lock up."[91] Barnes has clearly alleged he was seized.

The plaintiff must then demonstrate the following: (1) he suffered an injury; (2) such injury resulted directly and only from the use of force that was excessive to the need; and (3) such force was objectively unreasonable.[92] The use of excessive force is a violation of the Fourth Amendment.[93]

Barnes alleges that the actions of Knight, McClellan, and Bowman deprived Barnes of his constitutional rights to be free from excessive force.[94] Aside from this conclusory allegation, the complaint does not include any factual allegations to support the § 1983 claim for excessive force. The complaint fails to allege the use of any force by Knight, McClellan, and Bowman, much less force in excess of the need. The complaint states only that "Mr. Barnes asserts the use of excessive force in his arrest by the co-

---

[88] R. Doc. 90 at ¶ 26 ("The aforementioned facts described the circumstances of Mr. Barnes' arrest and assert the co-workers/defendants used excessive force.").
[89] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).
[90] *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).
[91] R. Doc. 90 at ¶ 9.
[92] *Id.*
[93] *See Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008); *Flores*, 381 F.3d at 396.
[94] R. Doc. 90 at ¶ 36.

workers/defendants because they acted in concert, conspired, and aided and abetted McQueen in his unlawful conduct."[95] Therefore, Barnes fails to sufficiently allege a cause of action for excessive force against Knight, McClellan, and Bowman under § 1983, and the Court need not determine whether Barnes' right to be free of the use of excessive force against him was clearly established.[96] This claim is dismissed with prejudice as to Knight, McClellan, and Bowman.

## II.   QUALIFIED IMMUNITY—OFFICIAL CAPACITIES

Barnes also sued Knight, McClellan, and Bowman in their official capacities as police officers for the City of Slidell.[97] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[98] As a result, claims against officers in their official capacities are treated as claims against the municipality they serve.[99] Barnes' claims against the City are addressed *infra* Part V.

## III.   CONSPIRACY CLAIMS AGAINST KNIGHT, MCCLELLAN, BOWMAN, AND THE CITY

Barnes asserts claims in his amended complaint for "conspiracy against his rights and the deprivation of his rights under color of law, pursuant to Title 18 U.S.C. § 241 and § 242 respectively," against McQueen, Knight, McClellan, Bowman, and the City.[100] Knight, McClellan, and Bowman argue that Barnes fails to state a cause of action for

---

[95] *Id.* at ¶ 26. Barnes' conspiracy claims are addressed *infra* Part III.

[96] The complaint also fails to allege any injury that Barnes suffered after Knight, McClellan, and Bowman arrived at the scene. *See* R. Doc. 90 at ¶¶ 9–13. A plaintiff must allege that he suffered "at least some injury." *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). An injury is legally cognizable "when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Bush*, 513 F.3d at 501. "While certain injuries are so slight that they will never satisfy the injury element, . . . psychological injuries may sustain a Fourth Amendment claim." *Flores*, 381 F.3d at 397–98 (citing *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc)).

[97] R. Doc. 90 at ¶¶ II.B–D.

[98] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[99] *Id.* ("Suits against state officials in their official capacity . . . should be treated as suits against the State."); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) ("The Masons also bring claims against Lafayette and Chief Craft, in his official capacity. Because Craft was sued in his official capacity, the claim against him is treated as a claim against Lafayette, a municipality.").

[100] R. Doc. 90 at ¶¶ 30–31. *See also* R. Doc. 90 at ¶¶ 24, 26–28.

conspiracy as to them because (1) he cannot bring conspiracy claims under 18 U.S.C. §§ 241 and 242, as they provide no basis for civil recovery; and (2) Barnes fails to allege that the officers entered into any prior agreement with McQueen to deprive Barnes of his rights.[101]

18 U.S.C. § 241 makes it a crime for two or more persons to conspire to deprive another of the rights secured to him by the Constitution or laws of the United States.[102] 18 U.S.C. § 242 makes it a crime to deprive another person of such rights under color of law on account of alienage or race.[103] These criminal statutes, however, do not provide a basis for private action under § 1983.[104] Therefore, to the extent that Barnes alleges a conspiracy to violate 18 U.S.C. §§ 241 and 242, these claims are dismissed with prejudice.

Barnes also alleges a claim against Knight, McClellan, and Bowman for conspiracy to use excessive force under § 1983.[105] To state a claim for conspiracy under § 1983, a plaintiff must allege (1) the defendants reached an understanding or agreement that they would deny the plaintiff of one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights.[106] The claimant must state specific facts, not merely conclusory allegations.[107] Nowhere in his complaint does Barnes allege that Knight, McClellan, or Bowman reached an agreement or understanding with

---

[101] R. Doc. 55-1 at 12–14.

[102] 18 U.S.C. § 241.

[103] 18 U.S.C. § 242.

[104] *Goldston v. Weary*, No. 14-1836, 2015 WL 423066, at *6 (E.D. La. Feb. 2, 2015); *Smithback v. Texas*, No. 07-0288, 2007 WL 1518971, at *12 (N.D. Tex. May 24, 2007) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *Clements v. Chapman*, 189 F. App'x 688, 692 (10th Cir. 2006); *Moore v. Kamikawa*, 940 F. Supp. 260, 265 (D. Haw. 1995), *aff'd*, 82 F.3d 423 (9th Cir. 1996); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("Appellant also claimed relief under 18 U.S.C. §§ 241 and 242. These criminal provisions, however, provide no basis for civil liability.").

[105] R. Doc. 90 at ¶ 26.

[106] *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carr v. Montgomery County, Tex.*, 59 F. Supp. 3d 787, 805 (S.D. Tex. 2014); *DiLosa v. City of Kenner*, No. 03-0310, 2004 WL 2984342, at *16 (E.D. La. Dec. 16, 2004).

[107] *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (citations omitted) (internal quotation marks omitted).

McQueen or each other to deny Barnes of his constitutional rights, and the Court cannot reasonably infer from the factual allegations that are in the complaint that the officers reached any agreement to deny Barnes of his rights. His complaint states only that Knight, McClellan, and Bowman "acted in concert, conspired, and aided and abetted McQueen in his unlawful conduct."[108] Mere conclusory allegations of conspiracy, however, "cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983."[109] Accordingly, Barnes' § 1983 claims for conspiracy are dismissed with prejudice.

IV.   STATE-LAW CLAIMS AGAINST KNIGHT, MCCLELLAN, AND BOWMAN

Barnes brings state-law claims against Knight, McClellan, and Bowman for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[110] The officers argue that Barnes fails to allege facts sufficient to state a claim under Louisiana law.[111]

A.   Assault and Battery

Barnes brings a state-law claim against Knight, McClellan, and Bowman for assault and battery.[112] Specifically, the amended complaint states the following:

> Mr. Barnes asserts a claim for assault and battery against [Knight, McClellan, and Bowman] because they acted in concert, conspired, and aided and abetted McQueen in his unlawful conduct. As such, [they] assaulted and battered Mr. Barnes in front of his children.[113]

---

[108] R. Doc. 90 at ¶¶ 24, 26–28.
[109] *Hale*, 786 F.2d at 690 (citations omitted) (internal quotation marks omitted).
[110] R. Doc. 90 at ¶¶ 19–22, 35.
[111] R. Doc. 55-1 at 14–15.
[112] *See* R. Doc. 90 at ¶ 35.
[113] *Id.* at ¶ 27.

16

Assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[114] Battery is "the intentional use of force or violence upon the person of another."[115] The basis for the state-law tort of assault and battery is Louisiana Civil Code article 2315.

Barnes appears to base his claim for assault and battery against Knight, McClellan, and Bowman on a theory of conspiracy liability, claims which the Court has dismissed.[116] Barnes fails to allege facts that, if true, would establish that Knight, McClellan, or Bowman made any threats or put Barnes in reasonable apprehension of harmful or offensive contact, that Barnes suffered any injury after Knight, McClellan, and Bowman arrived at the scene, or that the arresting officers used any force to effect the arrest. Therefore, the claim for assault and battery against these officers is dismissed with prejudice.

### B. Intentional Infliction of Emotional Distress

Barnes also asserts a state-law claim for intentional infliction of emotional distress.[117] The amended complaint states the following:

> Mr. Barnes asserts a claim of intentional infliction of emotional distress against the co-workers/defendants because they acted in concert, conspired, and aided and abetted McQueen in his unlawful conduct. Mr. Barnes asserts he suffered and continues to suffer extreme emotional distress as a result of the co-workers/defendants misconduct. Mr. Barnes asserts the co-workers/defendants aided and abetted McQueen's attack and continued to commit assault and battery on Mr. Barnes' person in front of his children under the false pretense of an arrest. As stated above, such arrest was lacking in probable cause.[118]

---

[114] LA. REV. STAT. § 14:36. *See also N.S. v. City of Alexandria*, 919 F. Supp. 2d 773, 784 (W.D. La. 2013) (citing *Groff v. Sw. Beverage Co.*, 2008-625 (La. App. 3 Cir. 11/5/08), 997 So. 2d 782, 787 (internal quotation marks omitted)).

[115] LA. REV. STAT. § 14:33. *See also Zimmerman v. Progressive Sec. Ins. Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1230, 1235, *writ denied*, 2015-1955 (La. 11/30/15); *Groff*, 997 So. 2d at 787.

[116] *See supra* "Discussion," Part III.

[117] *See* R. Doc. 90 at ¶ 35.

[118] *Id.* at ¶ 28.

The basis for the tort of intentional infliction of emotional distress under Louisiana law is Louisiana Civil Code article 2315.[119]  To recover for intentional infliction of emotional distress, a plaintiff must establish three elements: "'(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'"[120]

Unless the plaintiff alleges facts to show that the individual defendants acted in a manner that was atrocious, outrageous, or utterly intolerable, his claim must fail.[121] Indeed, the alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[122] The conduct may arise from an abuse by the actor of a position that "gives him actual or apparent authority over the other, or power to affect his interests."[123] It must be intended or calculated to cause severe emotional distress; "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is insufficient.[124] As the Fifth Circuit has explained, "Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury."[125]

---

[119] *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1021 (La. 2000); *Hamilton v. Powell*, No. 13-2702, 2014 WL 6871410, at *7 (W.D. La. Dec. 2, 2014).
[120] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1137 (5th Cir. 2014) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).
[121] *Obee v. Xerox Corp.*, No. 99-470, 1999 WL 717637, at *2 (E.D. La. Sept. 14, 1999).
[122] *White*, 585 So. 2d at 1209.
[123] *Id.* at 1209–10.
[124] *White*, 585 So. 2d at 1210.
[125] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001).

The following excerpt from the amended complaint contains the only actions Barnes attributes to Knight, McClellan, and Bowman:

> [Once they arrived at McQueen's house, Knight, McClellan, and Bowman] took Mr. Barnes into their custody and transported him to the Slidell lock up where he was charged with violating a protective officer. These responding officers, two of which are ranking officers and supervisors, made their decision to go through with the arrest and book Mr. Barnes in front of his two minor children, for violating a protective order without seeing a protective order, or verifying that one existed through the Louisiana Protective Order Registry. The responding officers based their decision to arrest and charge Mr. Barnes on the word of their co-worker, McQueen. These responding officers knew McQueen obviously had an intense personal conflict of interest. . . . Although [they] lacked probable cause, they arrested Mr. Barnes and charged him with a criminal offense which he did not commit and will have to answer for the rest of his life in situations such as employment interviews, etc.[126]

Barnes' amended complaint fails to allege facts that, if true, would establish that Knight, McClellan, and Bowman engaged in extreme and outrageous behavior or that they intended to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. As a result, Barnes' claim for intentional infliction of emotional distress with respect to Knight, McClellan, and Bowman is dismissed with prejudice.[127]

---

[126] R. Doc. 90 at ¶¶ 9, 11.

[127] *See, e.g., Clayton v. Zullo*, No. 10-1228, 2014 WL 790869, at *11 (E.D. La. Feb. 26, 2014) (dismissing the plaintiff's claim for intentional infliction of emotional distress because "Plaintiff has only made bald allegations in his complaint that there was a conspiracy between [Defendants] in the first place, and the Court has already found that the Plaintiff failed to state a claim for conspiracy" and "Plaintiff has brought no additional evidence or allegations . . . to support his claim that there was a conspiracy or that [Defendants] entered into such a conspiracy with the intention of inflicting severe emotional distress"); *Obee*, 1999 WL 717637, at *3 (concluding the plaintiff could not maintain a claim for intentional infliction of emotional distress under Louisiana law and noting that the plaintiff's complaint "fails to allege conduct beyond all possible bounds of decency; conduct utterly intolerable in a civilized community"); *Thomas v. Town of Jonesville*, No. 11-048, 2013 WL 265235, at *8 (W.D. La. Jan. 23, 2013), *aff'd*, 539 F. App'x 645 (5th Cir. 2013) ("[T]he court finds that [the defendant's] conduct during the investigatory stop and subsequent arrest was lawful and employed force within the bounds of reasonableness. This conduct cannot, therefore, as a matter of law, constitute "extreme and outrageous" behavior such as would be required for plaintiff's IIED claim.").

C.  <u>False Arrest</u>

Barnes also asserts a state-law claim against Knight, McClellan, and Bowman for false arrest.[128] Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority."[129] As under federal law, an officer who does not have a warrant for the arrest must have probable cause under Louisiana law.[130]

False arrest claims under Louisiana law are analyzed with the same standard used to assess false arrest claims under § 1983.[131] Louisiana courts recognize the defense of qualified immunity to a plaintiff's claims that an actor's conduct under color of state law deprived him or her of a right secured by Article I, Section 5 of the Louisiana Constitution, the state counterpart to the Fourth Amendment to the United States Constitution.[132] That is, like in the qualified immunity context, the actions of the defendants must be judged for objective reasonableness when considered under state law. "If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity."[133]

Considering the consent judgment and taking the well-pleaded allegations of the complaint as true, the Court finds Knight, McClellan, and Bowman lacked probable cause to arrest Barnes for violation of La. R.S. 14:79 and are not entitled to qualified immunity

---

[128] R. Doc. 90 at ¶ 32.

[129] *Deville*, 567 F.3d at 172 (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977)).

[130] *Id.*

[131] *See, e.g., Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1094 (La. 1990); *Kyle v. Civil Serv. Comm'n*, 588 So. 2d 1154, 1160–62 (La. Ct. App. 1991), *writ denied sub nom. Kyle v. Civil Serv. Comm'n, State of La.*, 595 So. 2d 654 (La. 1992).

[132] *See Moresi*, 567 So. 2d at 1094 ("[W]e believe that a qualified immunity is justified in an action against state officers or persons acting under color of state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution. Consequently, a plaintiff's allegation and proof of conduct under color of state law that deprived him or her of a right secured by Article I, § 5 may not always assure the plaintiff of recovery.").

[133] *Id.*

regarding Barnes' state-law claim for false arrest for the reasons stated *supra* in the § 1983 context.[134]

    D. <u>Excessive Force</u>

Barnes also alleges the officers used excessive force in violation of state law.[135] Louisiana courts analyze excessive force claims "under the aegis of the general negligence law of Louisiana."[136] Therefore, a plaintiff asserting excessive force under Louisiana law must establish the following elements: "(1) the conduct in question was a cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was breached by the defendant; and (4) the risk of harm was within the scope of the protection afforded by the duty breached."[137]

An officer "making a *lawful* arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."[138] "Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods

---

[134] Barnes also brings a claim for false imprisonment, which "occurs when one arrests and restrains another against his will and without statutory authority." *Bellanger v. Webre*, Bellanger v. Webre, 2010-0720 (La. App. 1 Cir. 5/6/11), 65 So. 3d 201, 209 (La. Ct. App.), *writ denied*, 69 So. 3d 1149 (La. 2011). *See also Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) ("Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority."). In Louisiana, "[F]alse arrest is not distinguished as a separate tort from false imprisonment." *Parker v. Town of Woodworth*, 2011-1275 (La. App. 3 Cir. 3/7/12), 86 So. 3d 141, 144 (La. Ct. App. 2012) (internal quotation marks omitted). Therefore, the motion to dismiss Barnes' claims for false imprisonment against Knight, McClellan, and Bowman is denied.

[135] R. Doc. 90 at ¶ 35.

[136] *Hall v. City of Shreveport*, 45,205 (La. App. 2 Cir. 4/28/10), 36 So. 3d 419, 422.

[137] *Id.*

[138] LA. CODE CRIM. PROC. art. 220.

of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment."[139]

The Court has concluded that Barnes fails to state a claim for excessive force under § 1983 because the complaint fails to allege the use of any force by Knight, McClellan, and Bowman, much less force in excess of the need.[140] Barnes fails to allege Knight, McClellan, and Bowman employed any conduct that constituted a breach of duty and that was a cause-in-fact of any harm, and, in light of the Court's analysis of Barnes' excessive force claim under § 1983, the Court finds Barnes fails to state a claim for excessive force under state law. This claim is therefore dismissed with prejudice.

E. Barnes' Remaining State-Law Claims

Barnes enumerates several additional state-law causes of action against Knight, McClellan, and Bowman: "The acts and conduct of the defendants constitute . . . malicious prosecution, invasion of privacy, intentional misrepresentation, . . . and defamation under the laws of the State of Louisiana."[141] Defendants argue Barnes fails to state a claim for these causes of action.[142] Barnes fails to thoroughly address these claims in his opposition.[143] In his opposition, Barnes avers only that, "Barnes described the circumstances of his arrest [in his complaint] and *concluded* that Knight, McClellan, and Bowman committed" these state-law offenses.[144]

Aside from Barnes' general and conclusory allegations, Barnes makes no other reference to these claims and fails to allege well-pleaded facts that state a claim for these causes of action. Accordingly, Barnes' state-law claims against Knight, McClellan, and

---

[139] *Penn v. St. Tammany Par. Sheriff's Office*, 2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157, 1161.
[140] *See supra* Part I.B.2.
[141] *Id. See also id.* at ¶ 13.
[142] *See* R. Doc. 55-1 at 5 n.26; R. Doc. 29-1 at 17–18.
[143] *See* R. Doc. 61 at 10.
[144] *Id.* (emphasis added).

Bowman for malicious prosecution, invasion of privacy, intentional misrepresentation, and defamation are dismissed with prejudice.[145]

V.   BARNES' CAUSES OF ACTION AGAINST THE CITY OF SLIDELL

A.  § 1983 Claims

The amended complaint contends, "[T]he City of Slidell [is] liable for all of the defendants' acts which are described herein and/or vicariously liable for all claims stated herein . . . ."[146]

A municipality is a "person" subject to suit under § 1983.[147] It is well-established, however, that a municipality or other local government cannot be vicariously liable under § 1983 for its employees' actions.[148] Therefore, Barnes' § 1983 claims against the City are dismissed to the extent Barnes asserts them under the doctrine of vicarious liability.

A municipality may be liable under § 1983 if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[149] To prevail on a § 1983 claim against a local government or municipality, a plaintiff must prove that action pursuant to official municipal policy caused his injury.[150] Thus, the plaintiff must establish three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.[151]

An "official policy" for purposes of § 1983 includes the following: (1) "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated

---

[145] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).

[146] R. Doc. 90 at ¶ 33.

[147] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

[148] *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Whitt v. Stephens Cty.*, 529 F.3d 278, 283 (5th Cir. 2008).

[149] *Connick*, 563 U.S. at 60.

[150] *Id.*

[151] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority"; and (2) a persistent and widespread practice of city officials or employees, "which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."[152] "[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."[153] The requirement of an official policy or custom is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."[154]

Barnes alleges that the City's customs and practices include "(a) the negligent hiring and retention of employees; (b) the negligent training and supervision of its employees or the lack of training and supervision of its employees; (c) its failure to adopt sufficient policies to deter or prevent the violation of civil rights of the Plaintiff; and (d) allowing the conspiracy and cover up of the unlawful arrest and prosecution of Officer McQueen's wife's ex-husband: Mr. Barnes."[155]

Barnes alleges that McQueen, Knight, McClellan, and Bowman "acted in accordance with the Slidell Police Department's customs and practices" and "were acting . . . within the course and scope of their employment" with the City of Slidell.[156] Barnes alleges Knight, McClellan, and Bowman charged Barnes with violating a protective order "without seeing [one] or verifying that one existed through the Louisiana Protective

---

[152] *Brown v. Bryan Cty., OK*, 219 F.3d 450, 457 (5th Cir. 2000).
[153] *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)).
[154] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).
[155] R. Doc. 90 at ¶ 34.
[156] *Id.* at ¶ 32.

Order Registry," when there was no protective order against Barnes.[157] Taking the allegations of the complaint as true, the Court finds Barnes sufficiently states a claim against the City for municipal liability under § 1983 for its alleged failure to adopt sufficient policies to deter or prevent the violation of Barnes' constitutional rights by its alleged failure to adopt a policy requiring officers to verify a protective order exists before arresting individuals for violation of La. R.S. 14:79. The motion to dismiss, insofar as it seeks dismissal of Barnes' § 1983 claim against the City for municipal liability, is denied.

### B.  State-Law Claims

Barnes alleges the City is vicariously liable "under Louisiana law for the actions of the defendants, its agents and employees, that violated duties owed to plaintiff under the Louisiana Constitution and La. Civ. Code arts. 2315–2316."[158]

"[A]n employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment."[159] "Course" refers to time and place, and "scope" refers to "the employment-related risk of injury."[160] Louisiana courts have explained that "[a]n employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[161] Courts should consider four factors when determining vicarious liability under Louisiana law: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to

---

[157] *Id.* at ¶ 9.
[158] *Id.* at ¶ 39. *See also id.* at ¶¶ 33, 40.
[159] *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996).
[160] *Id.*
[161] *Bates v. Caruso*, 2003-2150 (La. App. 4 Cir. 7/28/04), 881 So. 2d 758, 762. *See also Baumeister*, 673 So. 2d at 996 (explaining that, for vicarious liability to attach to the employer, the employee must have acted "within the ambit of his assigned duties and also in furtherance of his employer's objective").

the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.[162]

The Court finds Barnes sufficiently alleges a claim of vicarious liability against the City for the actions of Knight, McClellan, and Bowman. The complaint alleges that two of the three officers are ranking officers and supervisors with the Slidell Police Department.[163] Barnes also alleges the officers were dispatched to McQueen's home after McQueen called the police department on a non-emergency line, requested assistance, and said Barnes needed to go to jail.[164] The on-duty officers arrested Barnes, took him to the Slidell lock-up, filled out a police report, and charged Barnes with violation of a protective order, according to the amended complaint.[165] It is clear that, based on the well-pleaded allegations of the complaint, Knight, McClellan, and Bowman were acting within both the course and the scope of their employment with the Slidell Police Department when they arrested Barnes. The Court therefore finds that Barnes states a claim for vicarious liability against the City for the actions of Knight, McClellan, and Bowman.[166]

Barnes fails to sufficiently allege that the City is vicariously liable for McQueen's actions. The incident underlying Barnes' complaint occurred "on property owned by

---

[162] *Nagle v. Gusman*, 61 F. Supp. 3d 609, 626 (E.D. La. 2014) (citing *LeBrane v. Lewis*, 292 So.2d 216, 218 (La. 1974)).

[163] R. Doc. 90 at ¶ 9.

[164] *Id.* at ¶¶ 5, 9.

[165] *Id.* at ¶¶ 9, 38.

[166] *See, e.g., Johnson v. Gantt*, 606 So. 2d 854, 860 (La. Ct. App.), *writ denied*, 608 So. 2d 196 (La. 1992) (affirming finding of vicarious liability against the town for which defendant officer worked because the officer "was engaged to some appreciable extent in law enforcement activity and his motivation was not purely personal, entirely extraneous to his service as a policeman"). *Cf. Bates v. Caruso*, 2003-2150 (La. App. 4 Cir. 7/28/04), 881 So. 2d 758, 764 ("In the instant matter, the City had no knowledge of Caruso's propensity to abuse teenage boys. We conclude that Caruso was outside his employment and was effecting a purpose of his own when the abuse took place."); *Russell v. Noullet*, 721 So. 2d 868, 872 (La. 1998); *Patrick v. Poisso*, 38,841 (La. App. 2 Cir. 9/22/04), 882 So. 2d 686, 691.

[McQueen]."[167] Barnes alleges McQueen "acted out of malice and attacked the plaintiff over personal feelings and hatred"[168] and that "McQueen's attack was motivated by his personal hatred towards Mr. Barnes."[169] McQueen was off-duty at the time of the alleged attack, and nothing in the complaint suggests McQueen was in uniform.[170] Further, McQueen called the Slidell Police Department, requesting that on-duty police officers arrest Barnes.[171] An officer's employer can be held liable for the actions of an off-duty police officer only if the officer was acting in the course and scope of his employment at the time of his actions that led to injury.[172] Because the allegations of the second amended complaint indicate McQueen was not acting in the course and scope of his employment at the time of the alleged attack,[173] the City cannot be held vicariously liable for McQueen's actions.[174]

---

[167] R. Doc. 90 at ¶ 43.

[168] *Id.* at ¶ 42.

[169] *Id.* at ¶ 17.

[170] *Id.* at ¶ 14 ("McQueen is a Slidell Police Officer who was not working at the time of the attack. As a police officer, McQueen has the power to arrest even if he is off duty.").

[171] *Id.* at ¶ 5 ("Officer McQueen then called the Slidell Police Department on a non-emergency line and requested assistance.").

[172] *Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4 Cir. 5/12/99), 734 So. 2d 874, 879 (La. Ct. App.), *writ denied*, 99-2272 (La. 1999), (explaining that whether the City could be held vicariously liable for the negligence of the off-duty police officer, uniformed and working a paid detail, "turns on whether [the officer] was in the 'course and scope' of his employment for the City at the time of his alleged negligent actions"); *Russell*, 721 So. 2d at 872 (concluding that the city could not be held vicariously liable for the officer-defendant's assault of a bystander because the officer was acting outside the course and scope of his employment at the time of the assault).

[173] "'Under color of state law' does not necessarily equate to 'scope of employment.'" *McLaren v. Imperial Cas. & Indem. Co.*, 767 F. Supp. 1364, 1371 (N.D. Tex. 1991), *aff'd sub nom. McLaren v. Imperial Cas.*, 968 F.2d 17 (5th Cir. 1992). *See also Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) ("Action taken 'under color of' state law is not limited only to that action taken by state officials pursuant to state law. Rather, it includes: Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (citations omitted) (internal quotation marks omitted)); *Robertson v. Betz*, No. 09-10449, 2009 WL 2144371, at *2 (D. Mass. July 16, 2009) ("Whether an officer is acting under color of state law does not depend on whether he or she is in uniform, on or off duty, at a police station, or acting within or outside the scope of his or her employment.") (citing *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)).

[174] *See, e.g., Russell*, 721 So. 2d at 872 (denying vicarious liability claim against the City of New Orleans for an off-duty police officers actions, finding that "[t]he tortious assault on [the plaintiff] clearly was motivated by [the off-duty officer's] purely personal considerations, entirely extraneous to the City's interests in keeping the peace" and explaining that "[e]ven if [the off-duty officer] was acting as a police officer when he attempted to break up the fight involving his brother, he clearly was not acting in that capacity when he

VI.   PUNITIVE DAMAGES

Barnes seeks to recover punitive damages under both federal and state law from Knight, McClellan, Bowman, and the City.[175] Defendants Knight, McClellan, Bowman, and the City argue in their motion to dismiss that Barnes is not entitled to punitive damages.[176]

Barnes is not entitled to recover punitive damages from the City, as municipalities are immune to punitive damages under § 1983.[177] Punitive damages may be awarded in a § 1983 action against individuals "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[178] The "callous indifference" standard requires 'recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."[179]

The second amended complaint alleges that Knight, McClellan, and Bowman arrested Barnes for violating a protective order or injunction.[180] Nevertheless, Barnes alleges the officers did not see a protective order or "verify[] that one existed through the Louisiana Protective Order Registry" and arrested Barnes "without so much as a pre cursory [sic] investigation . . . on the word of their co-worker, McQueen."[181] The officers' alleged failure to confirm that Barnes was in violation of La. R.S. 14:79, and thus their

---

assaulted [the plaintiff]"); *Patrick*, 882 So. 2d at 691 ("The mere display of a badge and the representation as a police officer, without more, are insufficient to establish employment-rooted conduct.").

[175] R. Doc. 90 at ¶¶ 29, 43.

[176] R. Doc. 55-1 at 23–25.

[177] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). *See also Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015).

[178] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[179] *Williams v. Kaufman Cty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (internal quotation marks omitted).

[180] *Id.*

[181] R. Doc. 90 at ¶ 9.

alleged failure to ensure they had probable cause to arrest Barnes, constitutes callous indifference to Barnes' federally protected right against false arrest. Accordingly, taking the allegations of the complaint in the light most favorable to Barnes, the Court finds he has sufficiently stated a claim for punitive damages under § 1983.[182]

Under Louisiana law, punitive damages are not available unless expressly provided for by statute.[183] In both his complaint and his opposition, Barnes fails to identify any Louisiana statute authorizing an award for punitive damages in this case.[184] He is therefore not entitled to recover punitive damages for his state-law claim of false arrest.

## VII.  OPPORTUNITY FOR BARNES TO AMEND HIS COMPLAINT

In Barnes' opposition to Defendants' motion to dismiss, Barnes requests that, rather than dismiss Barnes' claims for excessive force and assault and battery, the Court should instead convert Defendants' motion into a motion for a more definite statement and allow Barnes to amend his complaint to re-plead those causes of action.[185]

Although Rule 15(a) states that courts should freely give a party leave to amend its pleading "when justice so requires,"[186] "leave to amend under Rule 15 is by no means automatic."[187] "Whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court."[188] The Court has already provided Barnes with an opportunity to amend his complaint. After Barnes' complaint was initially filed on

---

[182] *See, e.g., Thomas v. Frederick*, 766 F. Supp. 540, 562 (W.D. La. 1991) (finding that the plaintiff was entitled to recover punitive damages from the defendant sheriff because the sheriff "failed to go through even the procedural motions of carrying out his [] obligations, much less did he have any real objective of finding the truth . . .").

[183] *See Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 ("In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute.").

[184] *See* R. Doc. 90; R. Doc. 61.

[185] *See* R. Doc. 61 at 11.

[186] FED. R. CIV. P. 15(a)(2).

[187] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).

[188] *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 478 (5th Cir. 2013) (citations omitted) (internal quotation marks omitted).

November 19, 2014, Knight, McClellan, Bowman, and the City filed motions to dismiss in which they raised arguments similar to those in the motion to dismiss presently before the Court.[189] On May 21, 2015, the Court denied Defendants' motions to dismiss without prejudice and ordered Barnes to file an amended complaint that "clarif[ies] the claims and allegations being asserted against each Defendant."[190] The order also provided that Barnes "may include any factual allegations substantiating his claims."[191] Barnes filed an amended complaint on June 16, 2015.[192] At that time, Barnes was aware of the objections Defendants had to his complaint with respect to his claims for excessive force and assault and battery but nevertheless failed to sufficiently plead those causes of action in his amended complaint.[193] Further, Barnes has not explained how he would re-plead his excessive force and assault and battery claims if given the opportunity, and he did not provide any additional facts in his opposition that could cure the deficiencies of his amended complaint.[194] For example, with respect to Barnes' excessive force claim, the opposition states only that "the defendants now argue Barnes failed to state a cause of action for excessive force because he did not explicitly state that the officers used force and that he consequently suffered injuries. These two elements can be inferred."[195]

---

[189] *See* R. Docs. 10, 29.

[190] R. Doc. 42.

[191] *Id.*

[192] R. Doc. 53.

[193] *See Goldstein*, 340 F.3d at 254 ("Here, as pointed out by the district court, in addition to being poorly drafted and repetitive, the 110-page complaint is rich in legal deficiencies. . . . The plaintiffs were certainly aware of the defendants' objections to their complaint as written (because the objections appeared in the defendants' principal motion).").

[194] *Id.* at 255 ("[T]he plaintiffs did not demonstrate to the court how they would replead scienter more specifically if given the opportunity, did not proffer a proposed second amended complaint to the district court, and did not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects raised by the defendants. We cannot, in these circumstances, hold that the district court abused its discretion [in denying leave]."); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (finding the district court did not abuse its discretion in failing to grant leave to amend, as plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and defendants to the substance of their proposed amendment").

[195] R. Doc. 61 at 10–11.

Accordingly, the Court denies Barnes' request for leave to amend his complaint.

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion to dismiss, insofar as it is based on qualified immunity with respect to Barnes' false arrest claims, is **DENIED**. The Court finds Knight, McClellan, and Bowman are not entitled to qualified immunity on Barnes' § 1983 and state-law claim for false arrest at this stage of the proceedings.

**IT IS FURTHER ORDERED** that Barnes' § 1983 claims for excessive force against Knight, McClellan, and Bowman are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Barnes' claims for conspiracy under federal law against Knight, McClellan, and Bowman are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Barnes' state-law claims against Knight, McClellan, and Bowman for assault and battery, excessive force, intentional infliction of emotional distress, malicious prosecution, invasion of privacy, intentional misrepresentation, and defamation are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to dismiss, insofar as it seeks dismissal of Barnes' § 1983 claim against the City for municipal liability, is **DENIED**.

**IT IS FURTHER ORDERED** that Barnes' claim against the City for vicarious liability under state law for McQueen's actions is **DISMISSED WITH PREJUDICE**. The City may be held vicariously liable under state law for the actions of Knight, McClellan, and Bowman, but Barnes fails to state a claim for vicarious liability under state law against the City for McQueen's actions.

**IT IS FURTHER ORDERED** that Barnes may not recover punitive damages from the City under federal law or state law.

**IT IS FURTHER ORDERED** that Barnes may not recover punitive damages from Knight, McClellan, and Bowman under state law.

**IT IS FURTHER ORDERED** that Barnes' request for leave to amend his complaint is **DENIED**.

**New Orleans, Louisiana, this 7th day of March, 2016.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**