# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSHUA BARNES**                                **CIVIL ACTION**
      **Plaintiff**

**VERSUS**                                     **NO. 14-2636**

**KEITH MCQUEEN, et al.**               **SECTION: "E" (3)**
      **Defendants**

## ORDER AND REASONS

Before the Court are two motions to dismiss filed by Defendant Keith McQueen.[1] For the reasons below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Joshua Barnes ("Barnes") filed this action under 42 U.S.C. § 1983 on November 19, 2014, against Defendants Keith McQueen ("McQueen"), Nicholas Knight ("Knight"), Rockwell McClellan ("McClellan"), Keith Bowman ("Bowman"), and the City of Slidell ("City").[2]

Barnes avers that on November 27, 2013, he went to his ex-wife's residence to pick up his children.[3] At all relevant times, Barnes' ex-wife was married to and lived with McQueen, a police officer with the Slidell Police Department.[4] Barnes alleges that when he was waiting for one of his children, McQueen "ran at [Barnes] knocking him to the ground" and "struck [Barnes] and repeatedly hit him with his knees all over his body."[5] Barnes' 13-year-old son called 9-1-1.[6] McQueen's neighbor came out, and McQueen

---

[1] R. Docs. 56, 97.
[2] R. Doc. 1. The Slidell Police Department was dismissed as a party on November 6, 2015. *See* R. Doc. 77.
[3] R. Doc. 90 at ¶ 1.
[4] *Id.*
[5] *Id.* at ¶ 2.
[6] *Id.* at ¶ 3.

allegedly told the neighbor that Barnes was violating a protective order and instructed the neighbor to help arrest Barnes.[7] McQueen and his neighbor handcuffed Barnes.[8]

McQueen then called the Slidell Police Department on a non-emergency line and requested assistance, according to the second amended complaint.[9] Slidell Police Officer Knight, Sergeant Bowman, and Lieutenant McClellan arrived, took Barnes into their custody, and transported him to the Slidell lock-up, where he was charged with violating a protective order and simple assault.[10] The complaint alleges that the officers failed to verify that a protective order was in place, as there was none, and that Knight, Bowman, and McClellan "based their decision to arrest and charge Mr. Barnes on the word of their co-worker, McQueen."[11] The complaint states, however, that a permanent injunction was in place.[12] The complaint also alleges that "[a]t no time did Mr. Barnes strike, attempt to strike, or intend to strike anyone involved in the attack against him."[13]

Barnes brings claims against McQueen in his individual capacity because, Barnes alleges, McQueen "acted out of malice when he attacked Mr. Barnes and publicly berated him over child support payments in front of Mr. Barnes children."[14] Barnes also brings claims against McQueen in his official capacity pursuant to 42 U.S.C. § 1983, arguing McQueen violated his rights "by beating him and falsely arresting him in front of [Barnes'] children."[15] Barnes also brings § 1983 claims for false arrest and excessive force,[16] and

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at ¶ 5.
[10] *Id.* at ¶ 9; R. Doc. 97-3.
[11] R. Doc. 90 at ¶ 9.
[12] *Id.* at ¶ 10.
[13] *Id.* at ¶ 11.
[14] *Id.* at ¶ 17.
[15] *Id.* at ¶¶ 14–18.
[16] *Id.* at ¶¶ 19–20. The constitutional torts underlying Barnes' § 1983 claims are false arrest and excessive force. *See id.* In McQueen's motion to dismiss, McQueen states, "Although Plaintiff's claim is vague, it appears that he is alleging two constitutional tort claims, (1) false arrest or imprisonment; and (2) excessive

Barnes asserts state-law claims against McQueen for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[17]

Barnes alleges that Knight, McClellan, and Bowman conspired with McQueen to deprive Barnes of his rights under color of law.[18] Barnes also brings § 1983 claims for false arrest and excessive force[19] against Knight, McClellan, and Bowman for their individual actions.[20] Barnes asserts state-law claims against the officers for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[21]

Barnes asserts vicarious liability claims against the City under § 1983 and under state law and alleges the City is liable under § 1983 for the negligent hiring and retention of its employees, the negligent training and supervision of its employees, and the failure to adopt sufficient policies to deter or prevent the violation of Barnes' civil rights, and for allowing the conspiracy and cover-up of the unlawful arrest and prosecution of Barnes.[22]

On February 2, 2015, McQueen filed a motion to dismiss for failure to state a claim and for lack of subject-matter jurisdiction.[23] On May 21, 2015, the Court denied

---

use of force." R. Doc. 97-1 at 8. McQueen argues he is entitled to qualified immunity on those § 1983 claims. *Id.* at 8–12.

[17] R. Doc. 90 at ¶¶ 19–22, 35.

[18] *Id.* at ¶ 24.

[19] *Id.* at ¶¶ 24–26, 36. The constitutional torts underlying Barnes' § 1983 claims are false arrest and excessive force. *See id.* The motion to dismiss filed by Knight, McClellan, Bowman, and the City states, "[I]t is assumed that the plaintiff is only bringing claims against defendants Knight, McClellan and Bowman under § 1983 for excessive force and false arrest . . . ." R. Doc. 55-1 at 6–12. The officers argue they are entitled to qualified immunity on those § 1983 claims. *Id.* at 6–12.

[20] R. Doc. 90 at ¶¶ 24–26, 36.

[21] *Id.* at ¶¶ 19–22, 35.

[22] *Id.* at ¶¶ 32–34, 40–41.

[23] R. Doc. 13.

3

McQueen's motion without prejudice, ordering Barnes to file an amended complaint by June 19, 2015.[24] Barnes filed a Supplemental and Amended Complaint on June 16, 2015.[25]

On June 26, 2015, McQueen filed the motion to dismiss for failure to state a claim currently before the Court.[26] Barnes filed a response in opposition on July 7, 2015.[27] McQueen filed a reply in support of his motion on July 24, 2015.[28]

On January 25, 2016, Barnes filed a Second Supplemental and Amended Complaint naming Southern Fidelity Insurance Company, McQueen's homeowner's insurer.[29] McQueen filed a motion to dismiss the second amended complaint on February 8, 2016, raising the same arguments made in the June 26, 2015, motion to dismiss.[30] Barnes filed an opposition on March 1, 2016, adopting his July 7, 2015, opposition and reiterating various allegations from his complaint.[31]

## STANDARD OF LAW

When deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[32] The Court may consider only the pleadings, the documents attached to or incorporated by reference in the plaintiff's complaint, the facts of which judicial notice may be taken, matters of public record,[33] and documents attached to a motion to dismiss "when the documents are

---

[24] R. Doc. 42. Barnes argues in his opposition that the McQueen is barred from filing "further pre-answer motions under Rule 12" because his initial 12(b) motions "have been correctly denied by this Honorable Court." R. Doc. 60 at 5–6. The Court denied those motions without prejudice, however, allowing McQueen to refile Rule 12(b) motions should grounds arise. Therefore, Barnes' argument that McQueen is precluded from filing the Rule 12 motions currently before the Court is without merit.
[25] R. Doc. 53.
[26] R. Doc. 56.
[27] R. Doc. 60.
[28] R. Doc. 66.
[29] R. Doc. 90 at 3.
[30] R. Doc. 97.
[31] R. Doc. 105.
[32] *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935, 188 (2014).
[33] *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

referred to in the pleadings and are central to a plaintiff's claims."[34] If the Court accepts materials outside of the pleadings that do not fit within these parameters, the Court must treat the Rule 12(b)(6) motion as a motion for summary judgment pursuant to Rule 56.[35]

For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face.[36] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[37] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[38] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action."[39] The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."[40]

## DISCUSSION

I.   QUALIFIED IMMUNITY—INDIVIDUAL CAPACITY

Barnes asserts § 1983 claims of excessive force and false arrest against McQueen.[41] McQueen argues he is entitled to qualified immunity with respect to these claims.[42]

To state a claim under 42 U.S.C. § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."[43] The qualified immunity defense serves to

---

[34] *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).
[35] FED. R. CIV. P. 12(d).
[36] *Brand*, 748 F.3d at 637–38.
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[38] *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).
[39] *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).
[40] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[41] R. Doc. 90 at ¶¶ 14–20.
[42] R. Doc. 56-1 at 7–12; R. Doc. 97-1 at 7–12.
[43] *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

shield government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[44] When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[45] "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[46]

When evaluating a claim of qualified immunity, the Court must determine whether the facts alleged show the officer's conduct violated a constitutional right and whether the officer was acting under color of state law at the time of the alleged incident.[47] If there is a constitutional violation and state action, the Court must then determine whether the right was clearly established in light of the specific context of the case.[48] For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[49] Whether the right was clearly established at the time the defendant acted "requires an assessment

---

[44] *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004).

[45] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Jordan v. City of New Orleans*, No. 15-1922, 2016 WL 633666, at *2 (E.D. La. Feb. 17, 2016).

[46] *Backe*, 691 F.3d at 648. *See also Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994) ("To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense."); *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 620 (5th Cir. 1992).

[47] *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008).

[48] *Id.*

[49] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

6

of whether the official's conduct would have been objectively reasonable at the time of the incident."[50]

### A.   "Under Color of State Law"

To state a claim under 42 U.S.C. § 1983, the plaintiff must show the alleged violation of the Constitution or of federal law was committed by someone acting under color of state law.[51] As a threshold matter, the Court addresses whether McQueen, who was off duty at the time of the incident,[52] was acting under color of state law during the incident.[53]

"Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation."[54] Instead, the Court must consider (1) whether the officer misused or abused his official power, and (2) whether there is a nexus between the victim, the improper conduct, and the officer's performance of official duties.[55] "If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law."[56] However, "[i]f an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity."[57] Action taken under color of state law is "not limited only to that action taken by state officials pursuant to state law. Rather, it includes[]

---

[50] *Kinney*, 367 F.3d at 350 (quoting *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001)).

[51] *Atteberry*, 430 F.3d at 252–53.

[52] R. Doc. 90 at ¶ 14 ("McQueen is a Slidell Police Officer who was not working at the time of the attack. As a police officer, McQueen has the power to arrest even if he is off duty.").

[53] McQueen does not dispute that he was acting under color of state law at the time of the incident. *See* R. Doc. 97.

[54] *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010).

[55] *Id.* at 464–65; *Townsend v. Moya*, 291 F.3d 859, 865 (5th Cir. 2002).

[56] *Bustos*, 599 F.3d at 465.

[57] *United States v. Causey*, 185 F.3d 407, 414 (5th Cir. 1999) (quoting *Griffin v. Maryland*, 378 U.S. 130, (1964)).

[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[58]

Barnes alleges McQueen called the Slidell Police Department on a non-emergency line to request assistance.[59] McQueen seized Barnes by handcuffing him and directed his neighbor to help him arrest Barnes, according to the amended complaint.[60] Barnes remained handcuffed until the on-duty officers arrived and he was taken into custody.[61] Thus, taking the well-pleaded facts of the complaint as true, McQueen was acting under color of state law.[62]

B. Violations of Constitution or Federal Law

1. *False Arrest*

a. Violation of a Constitutional Right

A false arrest is a violation of the arrestee's Fourth and Fourteenth Amendment rights unless the arresting officer has probable cause for the arrest.[63] To survive a motion to dismiss a false arrest claim, a plaintiff "must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the

---

[58] *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (citations omitted) (internal quotation marks omitted).
[59] R. Doc. 90 at ¶ 5.
[60] *Id.* at ¶ 3.
[61] *Id.* at ¶¶ 8–9.
[62] *Cobb v. Jones*, No. 14-0745, 2015 WL 5794027, at *2 (W.D. La. Oct. 2, 2015) ("In the instant case, it is undisputed that Deputy Sers [an off-duty Natchitoches Parish Sheriff's Deputy] seized Plaintiff by tackling him, handcuffing him and preventing him from moving freely until officers from the Natchitoches Police Department arrived at the scene. Based on the foregoing, we find that Deputy Sers was clearly acting under color of state law when he arrested or seized [Plaintiff]."). *Cf. Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) ("Although the District Court found that at the time of the incident Chief Delcambre was on duty, the court further found, we believe correctly, that the altercation arose out of an argument over family and political matters and that Amy Delcambre was neither arrested nor threatened with arrest.").
[63] *Thomas v. Kipperman*, 846 F.2d 1009, 1011 (5th Cir. 1988) (per curiam); *Pienda v. City of Houston*, 124 F. Supp. 2d 1037, 1044 (S.D. Tex. 1999) (citing *Beck v. State of Ohio*, 379 U.S. 89 (1964); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)). *See also Perkins v. State of Miss.*, 455 F.2d 7, 39 n.70 (5th Cir. 1972) ("Beyond any doubt State police officers who deprive citizens of Federally protected rights by means of false arrest, imprisonment and prosecution are acting 'under color of law.'"); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (referring to false arrest as a "constitutional claim").

8

arrests."[64] "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[65] The facts must be particularized to the arrestee.[66] They must also be "known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest."[67] The arresting officer himself, however, need not have personal knowledge of all the facts constituting probable cause for an arrest.[68] To survive a motion to dismiss on a claim of false arrest, it is sufficient for the plaintiff to allege that the information that formed the basis for his arrest was supplied by an officer who knew or should have known the information was false.[69] Evidence that the arrestee was innocent of the crime, however, "is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"[70]

The Court must examine the allegations of the amended complaint to determine whether the pleadings assert facts that, if true, would overcome the defense of qualified immunity. According to the complaint, McQueen knocked Barnes to the ground,

---

[64] *Club Retro*, 568 F.3d at 207.

[65] *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

[66] *Club Retro*, 568 F.3d at 204.

[67] *Id.*

[68] *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984).

[69] *See Thomas*, 846 F.2d at 1011 ("Thomas asserts that the information which formed the basis for his arrest, detention, and prosecution was maliciously supplied by Norman with the knowledge that it was false. Therefore, he asserts that his arrest . . . [was] without probable cause. This Court has specifically held that such allegations state a claim of false arrest . . . under § 1983."); *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254, 261 (5th Cir. 1984) ("[A] defendant may challenge a Fourth Amendment probable cause determination on the ground that it was based on information which the state knew or should have known to be false and that such information was necessary to the finding of probable cause.").

[70] *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

handcuffed him, requested assistance from the Slidell Police Department on a non-emergency line, and told the dispatcher, "[M]y wife's ex-husband, he has a restraining order, I have a copy of the restraining order, he needs to go to jail for that."[71] Barnes alleges there was no protective order against him and McQueen knew there was no protective order against Barnes.[72] Barnes alleges he remained in handcuffs until Knight, Bowman, and McClellan arrived.[73] Neither party disputes that, based on the allegations of the complaint, McQueen's conduct amounted to an arrest.[74]

In addition to the amended complaint, the Court may consider matters of public record[75] and documents attached to the motion to dismiss "when the documents are referred to in the pleadings and are central to a plaintiff's claims."[76] Attached to McQueen's motion to dismiss is the consent judgment issued by the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, on July 21, 2011.[77] McQueen also attached the police report from the incident.[78] The consent judgment may be considered

---

[71] R. Doc. 90 at ¶¶ 2, 3, 5.

[72] *Id.* at ¶¶ 5, 10, 15.

[73] *Id.* at ¶ 8.

[74] Louisiana law defines an arrest as "'the taking of one person into custody by another [through] actual restraint [that] may be imposed by force or may result from submission of the person arrested to the custody of one arresting him.'" *State v. Coleman*, 2014-0402 (La. 2/26/16) (quoting *State v. Fisher*, 97–1133 (La.9/9/98), 720 So.2d 1179, 1183; LA. CODE CRIM. P. art. 201). "The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty." *Id.   See also Cobb*, 2015 WL 5794027, at *5 ("Neither party disputes that Deputy Sers arrested Plaintiff by taking him to the ground and forcing him to lie on his stomach, thereafter handcuffing Plaintiff behind his back. . . . Thus, the viability of Plaintiff's false arrest claim depends upon whether Deputy Sers had probable cause to believe Plaintiff committed an offense at the time of the arrest.").

[75] *See Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment." (internal citations omitted)); *Johnson v. Wells Fargo Bank, N.A.*, No. 13-1793, 2014 WL 2593616, at *3 (N.D. Tex. June 9, 2014) ("The Consent Judgment is also a matter of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.").

[76] *Brand*, 748 F.3d at 635.

[77] R. Doc. 97-2.

[78] R. Doc. 97-3.

by the Court both as a matter of public record[79] and as a document that is attached to the motion to dismiss, referred to in the pleadings, and central to Barnes' claims.[80] The police report may be considered by the Court, as it is attached to McQueen's motion, referred to in the pleadings, and central to Barnes' claims.[81] Under these circumstances, the Court's consideration of the consent judgment and the police report does not convert the motion to dismiss into a motion for summary judgment.[82]

In the consent judgment, the 22nd Judicial District Court did issue a permanent injunction prohibiting Barnes from going within 100 feet of his ex-wife, Mandy Barnes, or her home,[83] but to be a violation of La. R.S. 14:79, the injunction must be issued pursuant to one of the statutes or code articles listed therein.[84] This consent judgment was not.[85]

The police report reflects that the officers who arrived on the scene were "provided . . . a copy of 22nd Judicial Court paperwork."[86] The report also states that Knight "reviewed the copy of the original document concerning the permanent Order of Injunction issued by the Twenty Second Judicial Court."[87] The report reflects that the

---

[79] *See Cinel*, 15 F.3d at 1343 n.6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. Accordingly, the consideration of the consent judgment does not convert this motion into one for summary judgment." (internal citations omitted)); *Johnson*, 2014 WL 2593616, at *3 ("The Consent Judgment is also a matter of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.").

[80] *See* R. Doc. 90 at ¶ 10, in which Barnes quotes the consent judgment. Barnes claims he was falsely arrested for violating a protective order or permanent injunction in violation of La. R.S. 14:79. Barnes alleges in the complaint that there was a permanent injunction that prohibited him from being on his ex-wife's property but that nevertheless he was not violating La. R.S. 14:79 by virtue of his being on his ex-wife's property. Therefore, the consent judgment is central to his claims.

[81] *See* R. Doc. 90 at ¶ 38 (alleging the officers "issued a police report falsely accusing the plaintiff of violating state laws").

[82] Barnes filed a motion to strike the consent judgment and the police report from the motion to dismiss. R. Doc. 103. For the reasons stated herein, the motion to strike is **DENIED**.

[83] R. Doc. 56-3; R. Doc. 97-2.

[84] *See* LA. REV. STAT. § 14:79A(1)(a). *See also* LA. REV. STAT. §§ 9:361 et seq., 9:372, 46:2131 et seq., 46:2151, 46:2171 et seq., 46:2181 et seq.; LA. CHILD. CODE art. 1564 et seq.; LA. CODE CIV. PROC. arts. 3604, 3607.1; LA. CODE CRIM. PROC. arts. 327.1, 335.1, 335.2, 871.1.

[85] *See* R. Doc. 97-2; LA. REV. STAT. § 14:79A(1)(a).

[86] R. Doc. 97-3 at 4.

[87] *Id.*

officers "informed [Barnes] that he was being charged with LA R. S. 14:79 Violation of a Protective Order / Order of Permanent Injunction."[88]

Based on review of the well-pleaded allegations in the second amended complaint, the consent judgment, and the police report attached to McQueen's motion, the Court finds no probable cause for Barnes' arrest based on a violation of La. R.S. 14:79.[89] Violation of an injunction that was not issued pursuant to one of the statutes or code articles listed in La. R.S. 14:79 does not provide a basis for arrest under the statute. The consent judgment specifically states that the permanent injunction "shall not constitute a Louisiana Protective Order and shall not be forwarded to the Louisiana Protective Order Registry, pursuant to [La. R.S. 46:2136, *et seq.*]."[90] As a result, Barnes was not in violation of La. R.S. 14:79 when he was present on his ex-wife's property, and, because McQueen is alleged to have been in possession of and to have seen the consent judgment, there was no basis for McQueen to believe that Barnes was in violation.

McQueen argues, in any event, that he nevertheless had probable cause to arrest Barnes for simple assault in violation of La. R.S. 14:38[91] because Barnes "engaged in a physical altercation with a police officer while on the property," thus committing simple assault.[92] La. R.S. 14:38 defines simple assault as "an assault committed without a dangerous weapon."[93] Assault under Louisiana law is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[94]

---

[88] *Id.* at 6.
[89] Barnes was charged with violating La. R.S. 14:79. R. Doc. 97-3 at 6; R. Doc. 90 at ¶ 9.
[90] R. Doc. 56-3 at 2; R. Doc. 97-2 at 2.
[91] *See* R. Doc. 97-3; LA. REV. STAT. § 14:38.
[92] R. Doc. 97-1 at 10.
[93] LA. REV. STAT. § 14:38A.
[94] LA. REV. STAT. § 14:36.

Battery is "the intentional use of force or violence upon the person of another[,] or the intentional administration of a poison or other noxious liquid or substance to another."[95]

The Court must take the allegations in Barnes' second amended complaint as true.[96] In the second amended complaint, Barnes alleges that "[a]t no time did [he] strike, attempt to strike, or intend to strike anyone involved in the attack against him."[97] Based on Barnes' allegations, he did not attempt to commit a battery or intend to place another in reasonable apprehension of receiving a battery. Thus, no probable cause existed for arrest for simple assault.

Accordingly, considering the well-pleaded allegations of the complaint, the consent judgment, and the police report, the Court finds McQueen did not have probable cause to arrest Barnes for violation of La. R.S. 14:79 or for simple assault. Barnes has sufficiently pleaded a cause of action for false arrest, a constitutional violation.

### b. Clearly Established

The Fourth Amendment right to be free from false arrest was clearly established at the time of the incident.[98] But "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."[99] The inquiry is whether a reasonable officer could have believed the arrest at issue was lawful in light of clearly established law and the information the arresting officers possessed.[100]

McQueen possessed a copy of the permanent injunction,[101] which clearly stated it was not a protective order and "shall not be forwarded to the Louisiana Protective Order

---

[95] LA. REV. STAT. § 14:33.
[96] *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).
[97] R. Doc. 90 at ¶ 11.
[98] *See Club Retro*, 568 F.3d at 206.
[99] *Id.* (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)) (internal quotation marks omitted).
[100] *Mendenhall*, 213 F.3d at 230.
[101] Barnes allegedly told the dispatcher, "I have a copy of the restraining order." R. Doc. 90 at ¶ 5. *See also supra* nn. 77–87 and accompanying text; R. Doc. 97-3.

Registry."[102] As explained above, a violation of the injunction did not constitute a crime for which Barnes could be arrested under La. R.S. 14:79.[103] Therefore, the Court finds that, based on the terms of the consent judgment and the allegations of the complaint, a reasonable officer would have realized that the arrest under La. R.S. 14:79 of a person who violated an injunction not covered by a provision listed in La. R.S. 14:79 was a violation of that person's right to be free from false arrest. Thus, a reasonable officer in McQueen's circumstances would "understand that what he [was] doing violate[d]" Barnes' constitutional right to be free from false arrest.[104]

With respect to the simple assault charge, Barnes alleges that "[a]t no time did [he] strike, attempt to strike, or intend to strike anyone involved in the attack against him."[105] He also alleges that he did not harass anyone, threaten anyone, or resist a lawful arrest.[106] The Court finds that, assuming the allegations of Barnes' second amended complaint to be true, a reasonable officer would have realized that arresting a person who did not strike, attempt to strike, or intend to strike anyone for simple assault under Louisiana law would be a violation of that person's right to be free from false arrest.[107]

Accordingly, taking the well-pleaded allegations of the complaint as true and considering the consent judgment and the police report, the Court finds McQueen is not entitled to qualified immunity on Barnes' false arrest claim under § 1983 at this stage of the proceedings.

---

[102] R. Doc. 97-2 at 2.

[103] *See supra* n. 83–90 and accompanying text.

[104] *See Anderson*, 483 U.S. at 640.

[105] R. Doc. 90 at ¶ 11.

[106] *Id.*

[107] The Court reiterates that at this stage it must take the well-pleaded allegations of the complaint as true. *See* <u>Backe</u>, 691 F.3d at 648; *Jordan*, 2016 WL 633666, at *2.

### 2. *Excessive Force*

### a. Violation of a Constitutional Right

To bring a § 1983 claim for excessive force, a plaintiff must first show he was seized.[108] A seizure occurs when "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."[109] The plaintiff must then demonstrate the following: (1) he suffered an injury; (2) such injury resulted directly and only from the use of force that was excessive to the need; and (3) such force was objectively unreasonable.[110] The use of excessive force is a violation of the Fourth Amendment.[111]

The amended complaint alleges McQueen ran at Barnes and knocked him to the ground.[112] McQueen and his neighbor then handcuffed Barnes, a *per se* seizure.[113] Knight, McClellan, and Bowman arrived afterward and "took Mr. Barnes into their custody and transported him to the Slidell lock up."[114] Barnes has clearly alleged he was seized.

The plaintiff must allege he suffered "at least some injury."[115] An injury is legally cognizable "when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances."[116] The injury must be more than *de minimis* but need not be significant.[117] "While certain injuries are so slight that they will never satisfy the injury element, . . . psychological injuries may sustain a Fourth Amendment claim."[118] Barnes alleges that, as a result of McQueen's use of force, Barnes was laying "face down in the dirt, battered and handcuffed in front of his seven-year-old

---

[108] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).
[109] *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968).
[110] *Id.*
[111] *See Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008); *Flores*, 381 F.3d at 396.
[112] R. Doc. 90 at ¶ 2.
[113] *Id.* at ¶ 3.
[114] *Id.* at ¶ 9.
[115] *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993).
[116] *Bush*, 513 F.3d at 501.
[117] *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).
[118] *Flores*, 381 F.3d at 397–98 (citing *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc)).

daughter and thirteen-year-old son."[119] He contends he "suffered greatly and was in constant physical and emotional pain during the ordeal."[120] At one point, Barnes allegedly screamed for help, and as a result McQueen's neighbor came outside.[121] Taking the allegations in the light most favorable to Barnes,[122] the Court finds that the amended complaint sufficiently alleges that Barnes suffered injury.

When considering whether the force used was excessive to the need and objectively unreasonable, the Court considers the severity of the crime committed, whether the plaintiff posed an immediate threat to officers, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.[123] The Court looks to the totality of the circumstances, giving "careful attention to the facts and circumstances of each particular case."[124] The complaint alleges that McQueen "ran at [Barnes] knocking him to the ground," struck Barnes, and "repeatedly hit [Barnes] with his knees all over his body."[125] Barnes alleges he was "waiting for one of his children"[126] and that he did not violate Louisiana law or strike, attempt to strike, or intend to strike anyone.[127] According to the well-pleaded allegations of the second amended complaint, Barnes was not committing a crime, did not pose a threat to anyone, and was not resisting or evading arrest by flight. Barnes sufficiently alleges the use of force was excessive to the need and objectively unreasonable.[128]

---

[119] R. Doc. 90 at ¶ 8.
[120] *Id.*
[121] *Id.* at ¶ 3.
[122] *Spann*, 987 F.2d at 1115.
[123] *See Graham v. Connor*, 490 U.S. 386, 396 (1989); *Ramirez v. Martinez*, 716 F.3d 369, 377–78 (5th Cir. 2013).
[124] *Ramirez*, 716 F.3d at 377.
[125] R. Doc. 90 at ¶ 2.
[126] *Id.* at ¶ 1.
[127] *Id.* at ¶ 11.
[128] *See Spann*, 987 F.2d at 1115 (finding Plaintiff stated a claim for excessive force, as he alleged that the officers, "without any cause or justification, and in an 'unreasonable an excessive use of force,' 'did assault and beat [the plaintiff] with their hands and night sticks as well as other instruments yet to be identified'").

16

Taking the allegations of the second amended complaint as true,[129] Barnes has stated a claim that his right to be free from excessive force under the Fourth Amendment was violated.

b. Clearly Established

Whether Barnes' right to be free from the use of excessive force was clearly established "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident."[130] "Even though an officer's use of force must be objectively unreasonable to violate constitutional rights, a defendant's violation of constitutional rights can still be objectively reasonable if the contours of the constitutional right at issue are sufficiently unclear."[131] Therefore, the Court must consider whether McQueen had reasonable warning that his conduct violated Barnes' constitutional rights.[132] "[W]hile the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene."[133]

The law at the time of Barnes' arrest clearly established that the permissible degree of force turns on the severity of the crime at issue, whether Barnes posed a threat to the officer's safety, and whether he was resisting arrest or attempting to flee.[134] As discussed above, the allegations of the second amended complaint and the consent judgment indicate that Barnes did not violate the law, he did not pose a threat to anyone on-scene,

---

*Cf. Fuller v. Spragins*, 226 F.3d 642 (5th Cir. 2000) (per curiam) (finding that the plaintiff's excessive force claim fails "because the unrebutted summary judgment evidence demonstrates that only minimal force was used and that the officers did not hit or kick [the plaintiff]").

[129] *Spann*, 987 F.2d at 1115.

[130] *Kinney*, 367 F.3d at 350 (quoting *Conroe Creosoting Co. v. Montgomery County*, 249 F.3d 337, 340 (5th Cir. 2001)).

[131] *Bush*, 513 F.3d at 501.

[132] *Id.*

[133] *Id.*

[134] *Id.*

and he was not attempting to resist arrest or flee. Taking the allegations of the complaint as true, the Court concludes McQueen's conduct was not objectively reasonable and he is therefore not entitled to dismissal on Barnes' § 1983 claim for excessive force based on qualified immunity.

## II.    QUALIFIED IMMUNITY—OFFICIAL CAPACITY

Barnes also sued McQueen in his official capacity as a police officer for the City of Slidell.[135] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."[136] As a result, claims against officers in their official capacities are treated as claims against the municipality they serve.[137] Barnes' claims against the City are addressed in the Court's Order on Defendants Knight, McClellan, Bowman, and the City's motions to dismiss.[138]

## III.    CONSPIRACY CLAIMS AGAINST MCQUEEN

Barnes asserts claims in his amended complaint for "conspiracy against his rights and the deprivation of his rights under color of law, pursuant to Title 18 U.S.C. § 241 and § 242 respectively," against McQueen, Knight, McClellan, Bowman, and the City.[139] McQueen argues that Barnes fails to state a cause of action for conspiracy because (1) he cannot bring conspiracy claims under 18 U.S.C. §§ 241 and 242, as they provide no basis for civil recovery; and (2) Barnes fails to allege facts that support the elements of a conspiracy claim.[140]

---

[135] R. Doc. 90 at ¶¶ II.A, 18.

[136] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[137] *Id.* ("Suits against state officials in their official capacity . . . should be treated as suits against the State."); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 279 (5th Cir. 2015) ("The Masons also bring claims against Lafayette and Chief Craft, in his official capacity. Because Craft was sued in his official capacity, the claim against him is treated as a claim against Lafayette, a municipality.").

[138] R. Doc. 110 at 23–27. For Defendants Knight, McClellan, Bowman, and the City's motions to dismiss, *see* R. Doc. 55 and R. Doc. 99.

[139] R. Doc. 90 at ¶¶ 30–31. *See also* R. Doc. 90 at ¶¶ 24, 26–28.

[140] R. Doc. 56-1 at 12–13; R. Doc. 97-1 at 12–13.

18 U.S.C. § 241 makes it a crime for two or more persons to conspire to deprive another of the rights secured to him by the Constitution or laws of the United States.[141] 18 U.S.C. § 242 makes it a crime to deprive another person of such rights under color of law on account of alienage or race.[142] These criminal statutes, however, do not provide a basis for private action under § 1983.[143] Therefore, to the extent that Barnes alleges a conspiracy to violate 18 U.S.C. §§ 241 and 242, these claims are dismissed with prejudice.

Barnes also asserts a claim for conspiracy against McQueen under § 1983.[144] To state a claim for conspiracy under § 1983, a plaintiff must allege (1) the defendants reached an understanding or agreement that they would deny the plaintiff of one of his constitutional rights, and (2) the conspiracy resulted in an actual denial of one of his constitutional rights.[145] The claimant must state specific facts, not merely conclusory allegations.[146] Nowhere in his complaint does Barnes allege that McQueen reached an agreement or understanding with the other defendants to deny Barnes of his constitutional rights, and the Court cannot reasonably infer from the factual allegations that are in the complaint that the officers reached any agreement to deny Barnes of his rights. With respect to this claim, Barnes' complaint states only that "[a]ll of the defendants acted in concert, conspired, and aided and abetted McQueen in his unlawful

---

[141] 18 U.S.C. § 241.

[142] 18 U.S.C. § 242.

[143] *Goldston v. Weary*, No. 14-1836, 2015 WL 423066, at *6 (E.D. La. Feb. 2, 2015); *Smithback v. Texas*, No. 07-0288, 2007 WL 1518971, at *12 (N.D. Tex. May 24, 2007) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960)); *Clements v. Chapman*, 189 F. App'x 688, 692 (10th Cir. 2006); *Moore v. Kamikawa*, 940 F. Supp. 260, 265 (D. Haw. 1995), *aff'd*, 82 F.3d 423 (9th Cir. 1996); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("Appellant also claimed relief under 18 U.S.C. §§ 241 and 242. These criminal provisions, however, provide no basis for civil liability.").

[144] *See, e.g.*, R. Doc. 90 at ¶ 16.

[145] *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015); *Carr v. Montgomery County, Tex.*, 59 F. Supp. 3d 787, 805 (S.D. Tex. 2014); *DiLosa v. City of Kenner*, No. 03-0310, 2004 WL 2984342, at *16 (E.D. La. Dec. 16, 2004).

[146] *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (citations omitted) (internal quotation marks omitted).

conduct."[147] Mere conclusory allegations of conspiracy, however, "cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983."[148] Accordingly, Barnes' § 1983 claims for conspiracy are dismissed with prejudice.

IV.   STATE-LAW CLAIMS AGAINST MCQUEEN

Barnes brings state-law claims against McQueen for false arrest, excessive force, assault and battery, intentional infliction of emotional distress, invasion of privacy, malicious prosecution, intentional misrepresentation, and defamation.[149] McQueen contends Barnes fails to state a cause of action for under state law.[150]

A.   False Arrest

Barnes asserts a state-law claim against McQueen for false arrest.[151] Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority."[152] As under federal law, an officer who does not have a warrant for the arrest must have probable cause under Louisiana law.[153]

False arrest claims under Louisiana law are analyzed with the same standard used to assess false arrest claims under § 1983.[154] Louisiana courts recognize the defense of qualified immunity to a plaintiff's claims that an actor's conduct under color of state law deprived him or her of a right secured by Article I, Section 5 of the Louisiana Constitution,

---

[147] R. Doc. 90 at ¶ 16.
[148] *Hale*, 786 F.2d at 690 (citations omitted) (internal quotation marks omitted).
[149] *Id.* at ¶¶ 19–22, 35.
[150] R. Doc. 97-1 at 4, 13–15.
[151] R. Doc. 90 at ¶ 32.
[152] *Deville*, 567 F.3d at 172 (quoting *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La. 1977)).
[153] *Id.*
[154] *See, e.g., Moresi v. State Through Dep't of Wildlife & Fisheries*, 567 So. 2d 1081, 1094 (La. 1990); *Kyle v. Civil Serv. Comm'n*, 588 So. 2d 1154, 1160–62 (La. Ct. App. 1991), *writ denied sub nom. Kyle v. Civil Serv. Comm'n, State of La.*, 595 So. 2d 654 (La. 1992).

the state counterpart to the Fourth Amendment to the United States Constitution.[155] That is, like in the qualified immunity context, the actions of the defendants must be judged for objective reasonableness when considered under state law. "If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity."[156]

Considering the consent judgment and the police report and taking the well-pleaded allegations of the complaint as true, the Court finds McQueen lacked probable cause to arrest Barnes for violation of La. R.S. 14:79 and is not entitled to qualified immunity regarding Barnes' state-law claim for false arrest at this stage for the reasons stated *supra* in the § 1983 context.[157]

### B.  Excessive Force

Barnes asserts a state-law claim against McQueen for excessive force.[158] Louisiana courts analyze excessive force claims "under the aegis of the general negligence law of Louisiana."[159] Therefore, a plaintiff asserting excessive force under Louisiana law must establish the following elements: "(1) the conduct in question was a cause-in-fact of the resulting harm; (2) defendant owed a duty of care to plaintiff; (3) the requisite duty was

---

[155] *See Moresi*, 567 So. 2d at 1094 ("[W]e believe that a qualified immunity is justified in an action against state officers or persons acting under color of state law for damages caused by a violation of Article I, § 5 of the Louisiana Constitution. Consequently, a plaintiff's allegation and proof of conduct under color of state law that deprived him or her of a right secured by Article I, § 5 may not always assure the plaintiff of recovery.").

[156] *Id.*

[157] Barnes also brings a claim for false imprisonment, which "occurs when one arrests and restrains another against his will and without statutory authority." *Bellanger v. Webre*, Bellanger v. Webre, 2010-0720 (La. App. 1 Cir. 5/6/11), 65 So. 3d 201, 209 (La. Ct. App.), *writ denied*, 69 So. 3d 1149 (La. 2011). *See also Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 (La. 2006) ("Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority."). In Louisiana, "[F]alse arrest is not distinguished as a separate tort from false imprisonment." *Parker v. Town of Woodworth*, 2011-1275 (La. App. 3 Cir. 3/7/12), 86 So. 3d 141, 144 (La. Ct. App. 2012) (internal quotation marks omitted). Therefore, the motion to dismiss Barnes' claims for false imprisonment against McQueen is denied.

[158] R. Doc. 90 at ¶ 35.

[159] *Hall v. City of Shreveport*, 45,205 (La. App. 2 Cir. 4/28/10), 36 So. 3d 419, 422.

breached by the defendant; and (4) the risk of harm was within the scope of the protection afforded by the duty breached."[160]

An officer "making a *lawful* arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained."[161] "Factors in determining whether the force exerted was reasonable under the circumstances entail: the known character of the arrestee; the risks and dangers faced by the officer; the nature of the offense or behavior involved; the chance of escape if the particular means are not employed; the existence of alternative methods of arrest or subduing the arrestee; the physical strength, size and weaponry of the officers as compared to that of the arrestee; and the exigencies of the moment."[162]

The Court has determined that, based on the well-pleaded allegations of the complaint, McQueen lacked probable cause for Barnes' arrest and therefore Barnes' arrest was unlawful.[163] The Court has also concluded that Barnes has stated a claim that McQueen violated his right to be free from excessive force.[164] For the reasons stated *supra* in the § 1983 context, the Court finds Barnes has sufficiently stated a claim for excessive force under state law.

### C.  Assault and Battery

Barnes brings a state-law claim against McQueen for assault and battery.[165] Specifically, the amended complaint states the following:

> The facts set forth above support the claim of assault and battery because McQueen intentionally beat and arrested Mr. Barnes for no reason. As a result, Mr. Barnes asserts intentional threatening action, unpermitted contact and injury because of

---

[160] *Id.*
[161] LA. CODE CRIM. PROC. art. 220.
[162] *Penn v. St. Tammany Par. Sheriff's Office*, 2002-0893 (La. App. 1 Cir. 4/2/03), 843 So. 2d 1157, 1161.
[163] *See supra* Part I.B.1.
[164] *See supra* Part I.B.2.
[165] *See* R. Doc. 53 at ¶ 21.

McQueen's misconduct during the illegal arrest. Thus, McQueen committed assault and battery against Mr. Barnes.[166]

Assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[167] Battery is "the intentional use of force or violence upon the person of another."[168] The basis for the state-law tort of assault and battery is Louisiana Civil Code article 2315.

Barnes alleges that McQueen yelled at Barnes and that Barnes at one point screamed for help.[169] Barnes also claims that McQueen knocked Barnes to the ground, struck Barnes, and repeatedly hit Barnes with his knees.[170] Barnes also alleges that McQueen intentionally engaged in such behavior, asserting that McQueen acted out of malice when he attacked Barnes and that McQueen was motivated by his personal hatred toward Barnes.[171] The Court finds that Barnes has sufficiently alleged a cause of action for assault and battery against McQueen.

McQueen argues that if the Court finds Barnes failed to state a claim for false arrest and for excessive force, then Barnes' state-law claims for assault and battery fail.[172] The Court has determined, however, that Barnes has stated a claim for false arrest and excessive force.[173]

---

[166] *Id.*

[167] LA. REV. STAT. § 14:36. *See also N.S. v. City of Alexandria*, 919 F. Supp. 2d 773, 784 (W.D. La. 2013) (citing *Groff v. Sw. Beverage Co.*, 2008-625 (La. App. 3 Cir. 11/5/08), 997 So. 2d 782, 787 (internal quotation marks omitted)).

[168] LA. REV. STAT. § 14:33. *See also Zimmerman v. Progressive Sec. Ins. Co.*, 49,982 (La. App. 2 Cir. 8/12/15), 174 So. 3d 1230, 1235, *writ denied*, 2015-1955 (La. 11/30/15); *Groff*, 997 So. 2d at 787.

[169] R. Doc. 90 at ¶¶ 3, 4.

[170] *Id.* at ¶ 2.

[171] *Id.* at ¶ 17.

[172] R. Doc. 55-1 at 14–15.

[173] *See supra* "Discussion," Part I.

D. <u>Intentional Infliction of Emotional Distress</u>

Barnes also asserts a state-law claim for intentional infliction of emotional distress.[174] The basis for the tort of intentional infliction of emotional distress under Louisiana law is Louisiana Civil Code article 2315.[175]  To recover for intentional infliction of emotional distress, a plaintiff must establish three elements: "'(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'"[176]

Unless the plaintiff alleges facts to show that McQueen acted in a manner that was atrocious, outrageous, or utterly intolerable, his claim must fail.[177] Indeed, the alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[178] The conduct may arise from an abuse by the actor of a position that "gives him actual or apparent authority over the other, or power to affect his interests."[179] It must be intended or calculated to cause severe emotional distress; "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is insufficient.[180] "The distress suffered must be such that no reasonable person could be expected to endure it."[181] As the Fifth Circuit has explained, "Louisiana courts, like courts in other

---

[174] *Id.* at ¶ 22.

[175] *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1021 (La. 2000); *Hamilton v. Powell*, No. 13-2702, 2014 WL 6871410, at *7 (W.D. La. Dec. 2, 2014).

[176] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1137 (5th Cir. 2014) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).

[177] *Obee v. Xerox Corp.*, No. 99-470, 1999 WL 717637, at *2 (E.D. La. Sept. 14, 1999).

[178] *White*, 585 So. 2d at 1209.

[179] *Id.* at 1209–10.

[180] *Id.* at 1210.

[181] *Id.*

states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury."[182]

McQueen argues in his motion to dismiss that Barnes "has failed to allege any sort of emotional distress whatsoever, much less that his emotional distress was severe enough to warrant[] recovery under this theory."[183] Barnes does not address this argument in his opposition to McQueen's motion.[184]

The Fifth Circuit has characterized the threshold for severity of emotional distress suffered to substantiate a claim for intentional infliction of emotional distress as "unendurable."[185] In *Smith v. Amedisys Inc.*, the Fifth Circuit, applying Louisiana law, found that impact of persistent verbal, physical, and sexual harassment on the plaintiff, who testified that she felt angry, belittled, embarrassed, depressed, disgusted, humiliated, horrified, incompetent, mad, very offended, and repulsed as a result of the conduct, was insufficient to meet the high threshold for severity.[186] With respect to emotional distress, Barnes alleges only that he "suffered greatly and was in constant physical and emotional pain during the ordeal"[187] and that "he suffered and continues to suffer extreme emotional distress as a result of the co-workers/defendants [sic] misconduct."[188] These allegations are conclusory. The complaint fails to establish factual allegations that, if true, would

---

[182] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001).

[183] R. Doc. 56-1 at 14; R. Doc. 97-1 at 14–15.

[184] R. Doc. 60 at 10–11.

[185] *Smith v. Amedisys Inc.*, 298 F.3d 434, 450 (5th Cir. 2002).

[186] *Id.* at 449–50 (citing *White*, 585 So. 2d at 1209; RESTATEMENT (SECOND) OF TORTS § 46 cmt. j ("Emotional distress . . . includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. . . . The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.")).

[187] R. Doc. 90 at ¶ 8.

[188] *Id.* at ¶ 28.

meet the high threshold for severe emotional distress as required under Louisiana law to sustain a claim for intentional infliction of emotional distress.

McQueen also argues that Barnes fails to allege facts that establish extreme and outrageous conduct on part of McQueen. In Barnes' amended complaint, he alleges that McQueen ran at Barnes, knocked Barnes down, and struck Barnes repeatedly.[189] In addition, McQueen allegedly berated, yelled at, and cursed at Barnes in front of his 7-year-old daughter, his 13-year-old son, and McQueen's neighbors.[190] The complaint avers that, among other comments, McQueen called Barnes a loser, told him he needed to get a job, and said he needs to pay more in child support.[191]

While this conduct may be insulting, offensive, and humiliating, especially given that it took place in front of Barnes' children, the complaint does not establish that McQueen's conduct was "so outrageous" and "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable."[192] Although the Restatement (Second) of Torts states, "In particular police officers . . . have been held liable for extreme abuse of their position," the Restatement further explains, "Even in such cases, . . . the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous."[193] Barnes fails to allege facts that, if true, establish McQueen's conduct was sufficiently outrageous and extreme to support a cause

---

[189] *Id.* at ¶¶ 2–3.
[190] *Id.* at ¶¶ 6–7.
[191] *Id.*
[192] *White*, 585 So. 2d at 1209.
[193] RESTATEMENT (SECOND) OF TORTS § 46 (1965). The Louisiana Supreme Court has found that the state-law cause of action for intentional infliction of emotional distress is "generally in accord with the legal precepts set forth in the Restatement text and comments." *See White*, 585 So. 2d at 1209.

of action for intentional infliction of emotional distress.[194] Accordingly, this claim is dismissed with prejudice.

### E.   Barnes' Remaining State-Law Claims

Barnes enumerates several additional state-law causes of action: "The acts and conduct of the defendants constitute . . . malicious prosecution, invasion of privacy, intentional misrepresentation, . . . and defamation."[195] Barnes has failed to allege well-pleaded facts that state a claim for these causes of action; this sentence is merely conclusory. Accordingly, Barnes' state-law claims against McQueen for malicious prosecution, invasion of privacy, intentional misrepresentation, and defamation are dismissed with prejudice.[196]

### V.   PUNITIVE DAMAGES

Barnes seeks an award of punitive damages against McQueen under federal law.[197] McQueen argues in his motion to dismiss that Barnes is not entitled to punitive damages with regard to his state-law claims.[198] Indeed, under Louisiana law, punitive damages are not available unless expressly provided for by statute.[199] Barnes fails to identify any Louisiana statute authorizing an award for punitive damages in this case. Therefore, Barnes cannot recover punitive damages with respect to his state-law claims.

---

[194] *See, e.g., Obee*, 1999 WL 717637, at *3 (concluding the plaintiff could not maintain a claim for intentional infliction of emotional distress under Louisiana law and noting that the plaintiff's complaint "fails to allege conduct beyond all possible bounds of decency; conduct utterly intolerable in a civilized community").
[195] R. Doc. 90 at ¶ 35. *See also* R. Doc. 90 at ¶ 13.
[196] A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley*, 726 F.3d at 638 (citation omitted) (internal quotation marks omitted).
[197] R. Doc. 90 at ¶ 23; R. Doc. 60 at 11.
[198] R. Doc. 56-1 at 15; R. Doc. 97-1 at 15. In Barnes' opposition, he does not dispute this. Barnes maintains only that punitive damages may be awarded against McQueen in his individual capacity under § 1983. R. Doc. 60 at 11.
[199] *See Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002) ("In Louisiana, there is a general public policy against punitive damages; thus, a fundamental tenet of our law is that punitive or other penalty damages are not allowable unless expressly authorized by statute.").

VI.    JURISDICTION OVER BARNES' STATE-LAW CLAIMS

McQueen contends that if the Court dismisses Barnes' federal claims, the Court should also dismiss his state-law claims for lack of subject-matter jurisdiction.[200] The Court, however, has determined that Barnes states a claim for false arrest and for excessive force under § 1983 for which McQueen is not entitled to qualified immunity at this stage of the proceedings.[201]

In any civil action over which the Court has original jurisdiction, the Court has supplemental jurisdiction over all other state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[202]

The Court has determined that Barnes has stated a cause of action under federal law. Barnes' state-law claims are based on the same set of facts as his § 1983 claim for false arrest and excessive force and are "so related" to that claim "that they form part of the same case or controversy under Article III of the United States Constitution."[203] Therefore, this Court has supplemental jurisdiction over Barnes' state-law claims.[204]

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that McQueen's motion to dismiss[205] is **GRANTED IN PART** and **DENIED IN PART**.

---

[200] R. Doc. 56-1 at 15–16; R. Doc. 97-1 at 15–17.
[201] *See supra* "Discussion," Part I.
[202] 28 U.S.C. § 1367(a).
[203] *Id. See also* R. Doc. 90.
[204] McQueen does not argue that the Court lacks supplemental jurisdiction over the state-law claims if federal claims remain.
[205] R. Doc. 56.

**IT IS FURTHER ORDERED** that the motion to dismiss, insofar as it is based on qualified immunity, is **DENIED**. The Court finds McQueen is not entitled to qualified immunity on Barnes' false arrest claim or on Barnes' excessive force claim at this stage of the proceedings.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1367, the Court will continue to exercise supplemental jurisdiction over Barnes' remaining state-law claims.

**IT IS FURTHER ORDERED** that Barnes' claims for conspiracy under federal law against McQueen are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Barnes' state-law claims against McQueen for intentional infliction of emotional distress, malicious prosecution, invasion of privacy, intentional misrepresentation, and defamation are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Barnes may not recover punitive damages from McQueen under state law.

**IT IS FURTHER ORDERED** that Barnes' motion to strike[206] is **DENIED**.[207]

**New Orleans, Louisiana, this 7th day of March, 2016.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[206] R. Doc. 103.
[207] *See supra* n. 82 and accompanying text.